Argued and submitted November 21, 2000, affirmed July 11, 2001

Dana BRUNS,
Personal Representative
of the Estate of Andrew Bruns,
*Appellant,*

*v.*

Arzie F. WALTERS
and Madge T. Walters,
husband and wife;
and Arzie James Walters and Anna P. Walters,
husband and wife,
*Respondents.*

99-2232; A108784

28 P3d 646

Harold L. Olsen argued the cause for appellant. With him on the brief was Olsen & Huffman.

David Brian Williamson argued the cause for respondents Arzie James Walters and Anna P. Walters. With him on the brief was Williamson & Williamson.

No appearance for respondents Arzie F. Walters and Madge T. Walters.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

### KISTLER, J.

Plaintiff[1] filed this action to enforce a right-of-first-refusal clause in his lease. The trial court entered judgment in defendants' favor because plaintiff had waited too long to bring the action. Plaintiff appeals, and we affirm.

Arzie F. Walters (father)[2] owned seven acres of property. A home, a barn, and a chicken coop were located on half of the property. Another home and a business that father ran were located on the other half of the property. On April 3, 1979, father sold the business to plaintiff but retained ownership of the building in which the business was located and the underlying land. He leased the building and the surrounding acre of land to plaintiff. One of the clauses in the lease gave plaintiff a right of first refusal: If father decided to sell the property, he was required to notify plaintiff of the terms on which he would sell; at that point, plaintiff could exercise his right to purchase the property on the terms stated in father's notice.[3]

In January 1992, father decided to sell the entire property, primarily because his wife had gone into a nursing home. He listed the property with a realtor who put up "For Sale" signs on the property. The signs were plainly visible from the driveway leading to the building that plaintiff had leased. The realtor's listing expired without a sale. However, two of father's children, Arzie J. Walters (son) and Jean Smith (daughter), expressed an interest in the property. Although father was willing to give them the property, they

---

[1] Andrew Bruns died shortly after he brought this action, which is now being pursued by his estate's personal representative. We use the term plaintiff to refer either to Bruns or, where appropriate, to the personal representative.

[2] Defendants include Arzie F. Walters and his son, Arzie J. Walters. We refer to them as father and son.

[3] The clause provides:

"Right of First Refusal to Purchase. If lessor determines to sell the real property described above, including both the leased and non-leased premises, lessor shall notify lessee of the terms on which lessor will be willing to sell. If lessee within 20 days after receipt of lessor's notice indicates in writing lessee's agreement to purchase the premises on the terms stated in lessor's notice, lessor shall sell and convey the premises to lessee on the terms stated in the notice."

were concerned about his ability to pay for their mother's care. They accordingly agreed to pay father for the property.

On June 1, 1992, father divided the property into two parcels and entered into an agreement to sell one 3.3-acre parcel to his son and the remaining 3.7-acre parcel to his daughter.[4] Father did not give plaintiff written notice that he "intended to sell to [his] son" but did give him verbal notice. When asked whether he notified plaintiff before or after the sale, father explained that he could not "quote a specific date but we discussed it from time to time, [plaintiff] and I."[5] Father testified that he did not tell plaintiff the terms of the sale; that is, he did not tell plaintiff the purchase price, the interest rate, or the monthly payments, nor did he specifically say that he and his son were going to sign a contract of sale. When father told plaintiff that he was going to transfer the property, "[plaintiff] had no objection. He didn't ask for the terms of the agreement." Father later added, "he really showed no interest in that sale, inheritance, whatever."[6]

Son spoke to plaintiff about the property in 1994, when son financed an addition to the home on his 3.3-acre parcel. He told plaintiff that, as owner, he was borrowing money against the property for improvements and needed information about any contamination or spills that had occurred. As before, plaintiff showed no interest in the ownership of the property. Son later borrowed $50,000, secured by a mortgage on the property, and built an addition to the front of his home. In 1996, son took out another loan of $120,000, which he refinanced in 1998. That loan is also secured by a mortgage on the property.

Plaintiff showed no interest in the ownership of the property until May 1998 when he was unable to negotiate a new lease with son.[7] Plaintiff retained counsel, and, in

---

[4] Daughter's parcel contained the main residence, the barn, and the chicken coop; son's parcel, which is at issue in this action, contained the second residence and the building that plaintiff leased.

[5] Similarly, son spoke with plaintiff when the sale occurred. Son explained to him that "we [presumably son and his wife] would be the new owners of the land and the contract, he'd have to start renting from us and his ideas of it."

[6] Plaintiff died shortly after bringing this action. The only testimony on this issue comes from father and son, whom the trial court expressly found credible.

[7] The record is unclear whether the lease expired in 1998 or whether it had expired in 1994 and been renewed on a month-to-month basis. In either event,

November 1998, he pointed out to son the right of first refusal in the lease and said that he wanted "to exercise [his] right now." Son testified that, when plaintiff said that, "I just kind of backed off and I said, 'Well, we'll leave that to the attorneys and let them go after it.'"

In May 1999, plaintiff filed a complaint, alleging that father had breached the lease when he sold the property to son in June 1992 without first notifying plaintiff. Plaintiff sought specific performance to compel defendants to sell him the property on the same terms that father had sold it to son almost seven years earlier. After hearing the parties' evidence, the trial court ruled that plaintiff was not entitled to enforce the right of first refusal because, among other things, laches barred plaintiff from seeking specific performance.

On appeal, plaintiff raises four assignments of error. He assigns error to the trial court's ruling that he was not entitled to specific performance. He also assigns error to the denial of his claim for attorney fees, to the grant of attorney fees to defendant, and to the court's ruling on defendants' counterclaim for unpaid rent. Because plaintiff's last three assignments of error turn on the resolution of his first assignment of error, we begin with that assignment. We review the factual issues raised by plaintiff's first assignment of error *de novo*. ORS 19.415; *State ex rel Juv. Dept. v. Maves*, 33 Or App 411, 576 P2d 826 (1978).

■■  Plaintiff argues, and defendants do not strenuously dispute, that father breached the right-of-first-refusal clause in 1992 when he failed to give plaintiff notice of the terms on which he had agreed to sell the property to son. The issue on appeal focuses, as it did below, on whether laches bars plaintiff from seeking specific performance of that clause almost seven years after father breached it. *See Fontana v. Steenson*, 145 Or App 229, 232, 929 P2d 336 (1996) (setting out the test for laches).[8] More specifically, the issue turns on when laches

---

there is no dispute that the lease was in effect when father allegedly breached it in 1992 by failing to give plaintiff notice of the terms on which he was going to sell the property to his son.

[8] In order for laches to bar plaintiff's claim, defendants must establish that: "(1) plaintiff[ ] delayed asserting [his] claim for an unreasonable length of time, (2) with full knowledge of all relevant facts (and laches does not start to run until such knowledge is shown to exist), (3) resulting in such substantial prejudice to

began to run. Plaintiff argues that, because he did not know until 1998 that the property had been sold or the terms of the sale, laches did not begin running until 1998. Defendants respond that laches began running when father told plaintiff in 1992 that he was transferring the property to son. We begin with that preliminary determination.

■ "It is well established that laches does not start to run until a plaintiff 'knew or reasonably should have known he had an interest which was being threatened.'" *Weller v. Weller*, 122 Or App 301, 304, 858 P2d 140 (1993) (quoting *Hanns v. Hanns*, 246 Or 282, 306, 423 P2d 499 (1967)); *accord Vossen v. Forrester*, 155 Or App 323, 327-28, 963 P2d 157 (1998), *rev den* 328 Or 275 (1999); *Nyman v. City of Eugene*, 32 Or App 307, 320, 574 P2d 332 (1978), *aff'd on other grounds* 286 Or 47, 593 P2d 515 (1979). In this case, plaintiff advances two arguments why laches did not begin to run until 1998. He argues primarily that he did not know the terms of father's sale to his son until then. He reasons that he cannot be held to have unduly delayed in exercising his rights until he knew the terms on which he could exercise them. Plaintiff argues alternatively that he did not even know that father had sold the land until 1998.

■ Plaintiff's first argument fails to distinguish two separate issues. The question whether plaintiff would choose to exercise his right of first refusal if he knew the terms of the sale is separate from the question whether father breached his obligation to notify plaintiff of those terms before he sold the property. Plaintiff did not need to know the terms on which father sold the property to his son to know that father had breached the lease. All plaintiff needed to know was that father had sold the property without notifying him of the terms. At that point, he was aware of the breach and could have brought an action to remedy it. To be sure, plaintiff may not have known whether he wanted to exercise his right of first refusal until he learned the terms of the sale. But he knew that the breach was complete once he learned that the

defendant[s] that it would be inequitable for the court to grant relief.'" *Fontana*, 145 Or App at 232 (quoting *Mattson v. Commercial Credit Business Loans*, 301 Or 407, 419, 723 P2d 996 (1986)).

property had been sold without first receiving notice. Plaintiff's first argument provides no reason to say that laches did not begin to run until 1998.

■ Plaintiff argues alternatively that "he did not have knowledge that the property was going to be sold" until 1998. The realtor, however, posted "For Sale" signs on the property, and plaintiff clearly was on notice that father was attempting to sell the property. Although it is possible that father could have given his property to his son and daughter, we find that father's discussions with plaintiff, especially when viewed in light of his earlier attempts to sell the property, put plaintiff on notice that father was selling the property to his children. *See Vossen,* 155 Or App at 328; *Nyman,* 32 Or App at 320. We agree with the trial court that laches began to run in June 1992.

■ ■ Having determined the date when laches began to run, we also find that plaintiff waited an unreasonable period of time to bring this action after having knowledge of father's breach. Plaintiff waited longer than the analogous six-year statute of limitations to bring this action. *See* ORS 12.080(1) (limitations period for breach of contract actions); *Fontana,* 145 Or App at 232 (analogous statute of limitations establishes the presumptively reasonable period for bringing an equitable action).[9]

■ Plaintiff's delay also resulted in substantial prejudice to defendants. "The harm or prejudice to a defendant necessary to the laches defense can be * * * a disadvantageous change in position," *Rise v. Steckel,* 59 Or App 675, 685, 652 P2d 364, *rev den* 294 Or 212, 656 P2d 943 (1982), "making it inequitable to afford the relief sought against a party asserting laches," *Hanns,* 246 Or at 305. As discussed above, after buying the property in 1992 and discussing his ownership with plaintiff, son mortgaged the property twice and used at

---

[9] Plaintiff brought his claim in May 1999, nearly seven years after the contract was breached. Ordinarily, the six-year statute of limitations for breach of contract claims runs from the date of the breach, although the limitations period will be tolled if the defendant fraudulently conceals the breach. *See Chaney v. Fields Chevrolet Co.,* 264 Or 21, 27, 503 P2d 1239 (1972); *see also Frevach Land Company v. Multnomah County Dept. of Environmental Services,* (No. CV-99-1295-HU), 2000 WL 1875839, (D Or 2000) (distinguishing *Chaney*). Plaintiff does not argue that defendants fraudulently concealed the 1992 breach.

least some of the money to finance an addition to his home. Granting plaintiff specific performance would require undoing those transactions, to son's, and potentially the lender's, disadvantage. We agree with the trial court that plaintiff waited too long to enforce his right of first refusal.[10]

Affirmed.

---

[10] We affirm without discussion the other rulings plaintiff assigns as error.