Argued and submitted September 10, 2007, decision of Court of Appeals affirmed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings March 20, 2008

Charles HARRIS
and Kary A. Harris,
co-trustees of the Harris Family Trust,
*Respondents on Review,*

*v.*

George R. SUNIGA
and George R. Suniga, Inc.,
an Oregon corporation,
*Petitioners on Review.*

George R. SUNIGA
and George R. Suniga, Inc.,
an Oregon corporation,
*Third-Party Plaintiffs,*

*v.*

HARVEY CAIN CONSTRUCTION, INC.,
an Oregon corporation;
Color Flow Painting, Inc.;
Paul Allport,
dba Triple J Remodeling and Roofing;
and Scott A. Boyd,
dba Boyd's Painting,
*Third-Party Defendants.*

(CC 03C16648; CA A125316; SC S054549)

180 P3d 12

Norman R. Hill, Webb, Martinis & Hill, Salem, argued the cause and filed the briefs for respondents on review.

Thomas M. Christ, Cosgrave Vergeer Kester LLP, Portland, argued the cause and filed the briefs for petitioners on review.

Frederic E. Cann, Cann Lawyers, Portland, submitted a brief on behalf of *amicus curiae* Northridge Remodeling Company.

Stan Austin, Miller Nash, LLP, Bend, submitted a brief on behalf of *amici curiae* the American Council of Engineering Companies, ACEC Oregon, AFSE/The Best People on Earth, the Professional Engineers of Oregon, the Oregon section of the American Society of Civil Engineers, and the National Society of Professional Engineers.

David F. Rees and Joshua L. Ross, Stoll Stoll Berne Lokting & Shlachter P.C., Portland, submitted a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

A. Richard Vial and Christopher M. Tingey, Vial Fotheringham LLP, Portland, submitted a brief on behalf of *amicus curiae* Community Associations Institute—Oregon.

Dean E. Aldrich, J. Lee Street, and Adele Ridenour, The Aldrich Law Office, P.C., Portland, submitted a brief on behalf of *amici curiae* Community Action Organization of Washington County; Farmworker Housing Development Corporation; Mississippi Overlook, LLC; Murrey R. and Joann D. Albers; Association of Unit Owners of Hilltop Condominiums at Uptown; Archival Properties, LLC; Michael and Deanne Fahy Price; Association of Unit Owners of the Linden Village Condominiums; Dennis O. and Kathleen McCarney Mayer; Lon and Charlene Paulson; and Barry and Alyssa Engle.

Phillip E. Joseph, James C. Prichard, and Robert W. Wilkinson, Ball Janik LLP, Portland, submitted a brief on behalf of *amici curiae* Daniel and Stephanie Harmond and Brian and Janet Mattson.

Before De Muniz, Chief Justice, and Durham, Balmer, Kistler, Walters, and Linder, Justices.**

BALMER, J.

---

** Gillette, J., did not participate in the consideration or decision of this case.

**BALMER, J.**

This tort case requires us to determine the scope of the "economic loss" doctrine. That doctrine bars a party that has suffered a purely economic loss from bringing a negligence action against the party that caused the loss, unless there is a special relationship between the parties. Plaintiffs are trustees of a trust that purchased an apartment building that plaintiffs alleged had been negligently constructed by defendants. Defendants had built the apartment building for an investment company, which later sold it to plaintiffs. Plaintiffs alleged that they were harmed by defendants' negligence in constructing the building, and defendants responded by asserting that plaintiffs' claim was for a purely economic loss and therefore could not be brought in the absence of a special relationship between defendants and plaintiffs. The trial court granted summary judgment for defendants. On appeal, the Court of Appeals reversed, agreeing with plaintiffs that their claim was based on damage to their property and therefore was not barred by the economic loss doctrine. *Harris v. Suniga*, 209 Or App 410, 149 P3d 224 (2006). For the reasons described below, we affirm the decision of the Court of Appeals.

The relevant facts are undisputed, and we take them from the Court of Appeals opinion and the summary judgment record. Defendants were the general contractors for the construction of an apartment building in Salem, which they built for a California investment company. In 2002, the California investment company sold the apartment building to the Harris Family Trust, of which plaintiffs are the trustees. Shortly after the purchase, plaintiffs discovered what they allege to be defects in the construction of the building, including defendants' failure to install required flashings on various parts of the building. Because of those defects, plaintiffs claim, water has leaked into the building, causing dry rot and requiring extensive repairs. Plaintiffs brought this action, alleging that defendants were negligent in constructing the building and seeking recovery of the $376,000 required to repair the building.

Defendants answered, denying plaintiffs' claims and asserting various affirmative defenses. Defendants then

moved for summary judgment arguing, among other things, that plaintiffs' claim was barred by the economic loss doctrine. Defendants asserted that the damage to the apartment building was an investment loss for plaintiffs. In defendants' view, whether the loss was characterized as a reduction in the value of plaintiffs' investment in the building or as the difference between what plaintiffs actually paid for the building and what they would have paid had they known the true condition of the building, plaintiffs' loss was purely economic. Accordingly, defendants claimed, Oregon law barred plaintiffs from asserting a negligence claim against defendants, in the absence of a special relationship between the parties.

As noted, the trial court agreed with defendants and granted their motion for summary judgment, but the Court of Appeals reversed. The Court of Appeals began by recognizing both "the general rule that all persons are liable in negligence if their conduct unreasonably creates a foreseeable risk of harm to others" and the existence of various "exceptions" to that general rule. 209 Or App at 415. One of those exceptions, the court noted, was claims for economic losses—" 'financial losses such as indebtedness incurred and return of monies paid' "—which Oregon case law had contrasted with "damages for injury to person or property." 209 Or App at 418 (quoting *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 159 n 6, 843 P2d 890 (1992)). The issue, then, was whether plaintiffs' damages for the dry rot allegedly caused by defendants' negligent construction was an "economic loss" or was, instead, "injury to property."

The Court of Appeals then looked to *Newman v. Tualatin Development Co. Inc.*, 287 Or 47, 597 P2d 800 (1979), where this court had held that a class of townhouse owners who had alleged negligent construction of their units could recover from the builder even though the owners were not in privity with the builder. Although the issue before this court in *Newman* had been class certification, rather than the merits of the plaintiffs' claims, the Court of Appeals noted that the nonprivity plaintiffs in that case were in the same position as plaintiffs here, and this court had stated that " 'the nonprivity owners can prevail if they [can] prove the defendant was negligent.' " *Harris*, 209 Or App at 419 (quoting *Newman*, 287 Or at 52). The Court of Appeals concluded

that the kind of losses alleged by plaintiffs here, like those alleged by the plaintiffs in *Newman*, were not the kind of economic losses barred by the economic loss doctrine and therefore reversed the trial court's grant of summary judgment. Defendants filed a petition for review, which we allowed.

The parties agree that, under Oregon common law, a person whose negligent conduct unreasonably creates a foreseeable risk of harm to others and causes injury to another ordinarily is liable in damages for that injury. *See Bailey v. Lewis Farm, Inc.*, 343 Or 276, 286-87, 171 P3d 336 (2007) (illustrating rule). The parties also agree that Oregon cases have identified, as an exception to that general rule, claims for economic losses, as opposed to claims for damages for injury to person or property. *See Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 7, 734 P2d 1326 (1987) (identifying claims for "economic" injuries as exception to general rule permitting recovery for injuries caused by another's negligence). The parties' disagreement focuses on the appropriate scope and application of the economic loss doctrine.

Before turning to the parties' specific arguments, we briefly review the development of the economic loss doctrine in Oregon.[1] Defendants argued that the doctrine was first recognized in 1992, in *Onita Pacific Corp*. In fact, this court has recognized the substance (although not the label) of the economic loss doctrine at least since *Snow v. West*, 250 Or 114, 440 P2d 864 (1968), where the court held that an employer could not maintain an action against a third person for loss of services of an employee whose death was caused by the third person's negligence. The court noted that financial losses caused by a third person's *intentional conduct* might be the basis for liability, but that liability for such losses could not be premised on negligence. *Id.* at 116-17. In later cases, this court explained the reasons for its adoption of the economic loss doctrine, noting that permitting the recovery of all economic losses caused by a person's negligence would have

---

[1] On the economic loss doctrine generally, see Fleming James, Jr., *Limitations on Liability for Economic Loss Caused by Negligence: A Pragmatic Appraisal*, 25 Vanderbilt L Rev 43 (1972), and Fowler V. Harper, Fleming James, Jr., and Oscar S. Gray, 4 *Harper, James and Gray on Torts* § 25.18A (3d ed 2007).

the potential of leading to "limitless recoveries and * * * ruinous consequences," *Ore-Ida Foods v. Indian Head*, 290 Or 909, 917, 627 P2d 469 (1980), and quoting Judge Cardozo's statement from *Ultramares Corp. v. Touche*, 255 NY 170, 179, 174 NE 441 (1931), that allowing recovery in negligence for economic losses unrelated to injury to person or property could lead to " *'liability in an indeterminate amount for an indeterminate time to an indeterminate class.'* " *Duyck v. Tualatin Valley Irrigation Dist.*, 304 Or 151, 157, 742 P2d 1176 (1987) (quoting *Ultramares*) (emphasis in *Duyck*).[2]

◼    In *Hale v. Groce*, 304 Or 281, 284, 744 P2d 1289 (1987), the court stated the rule clearly: "[O]ne ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property." For a plaintiff to recover in those circumstances, the plaintiff would have to show "[s]ome source of duty outside the common law of negligence," *id.*, such as a special relationship or status that imposed a duty on the defendant beyond the common-law negligence standard. *See Onita Pacific Corp.*, 315 Or at 159-66 (stating and applying rule in context of claim for negligent misrepresentation).

◼    Here, plaintiffs do not base their claim on a special relationship or status or on any contract with defendants, but rather seek to recover in negligence on the grounds that defendants' negligence resulted in foreseeable damage to their property. Defendants' central argument in response is that plaintiffs' loss is "purely economic." Defendants point out that plaintiffs are "strangers" to defendants in the same sense that this court used that term in *Hale* because plaintiffs did not purchase the building from defendants, contract with defendants, or have any other relationship with defendants.[3] If defendants' negligence harmed anyone's property,

---

[2] In offering that justification for the economic loss doctrine, this court's decisions are consistent with those of most other American and British courts. As Professor James points out, however, tort rules that permit recovery for injury to person or property because of a single negligent act also can result in the sort of limitless liability to which Judge Cardozo referred, as demonstrated by the fires that destroyed London and Chicago in years past. James, 25 Vanderbilt L Rev at 50.

[3] *Amici curiae* Harmond and Mattson assert that the economic loss doctrine is actually two distinct concepts: a "contractual expectations doctrine" that protects the expectations and obligations of contracting parties from being modified by tort

defendants argue, that person was the initial owner of the property, the person for whom defendants constructed the building: "[T]he damage was not to *plaintiffs'* property, but to the property of the original owner." (Emphasis in original.) Even if defendants were negligent in constructing the building, the argument goes, their negligence occurred before plaintiff bought the property, and, if plaintiffs suffered any injury because of defendants' negligence, it was because they inadequately had inspected the property before they bought it and paid the seller more for it than they should have. According to defendants, plaintiffs' loss, at most, was an investment loss.

■ Defendants' argument has some logical appeal. Plaintiffs allege that the cost to repair the dry rot caused by defendants' negligence is $376,000. If, when plaintiffs purchased the property, they had been aware of the negligent construction and existing and increasing dry rot, presumably they would not have been willing to pay the price they did, but only an amount $376,000 less than that price. In that sense, the loss that plaintiffs suffered is simply the difference between the price that they paid for this investment asset and the price that they would have paid had they known the actual condition of the asset. Such an investment loss is a purely "economic loss," and persons who suffer those kinds of losses cannot recover damages in negligence unless they can prove a special relationship or duty beyond the common-law duty to exercise reasonable care to prevent foreseeable harm. *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 341, 83 P3d 322 (2004) (articulating and applying standard in negligence case seeking damages related to decline in stock price). Moreover, plaintiffs purchased the apartment building at issue here as an investment, rather than as a residence, arguably making it more appropriate to view this dispute over the value of the building as involving a purely financial matter.

---

law principles and a "foreseeability" rule that limits a defendant's liability for the economic losses that its conduct may cause to remote plaintiffs. We do not necessarily accept *amici*'s characterization of the economic loss doctrine, but we do agree that the absence of any contract between plaintiffs and defendants in this case means that the focus of our analysis is on defendants' potential liability to a plaintiff with whom defendants have no direct relationship.

Defendants' theory, however, proves too much. Every physical injury to property can be characterized as a species of "economic loss" for the property owner, because every injury diminishes the financial value of the property owner's assets. Damage to a car reduces the value of the car—one of the owner's assets. A tree falling on a person's residence is damage to property, but also can be characterized as a financial loss because it reduces the value of the residence, which the owner may properly view as an asset or financial investment as well as a residence. Yet the law ordinarily allows the owner of the damaged car or residence to recover in negligence from the person who caused the damage. In *Onita Pacific Corp.*, this court used the term "economic losses" to describe "financial losses such as indebtedness incurred and return of monies paid, *as distinguished from damages for injury to person or property.*" 315 Or at 159 n 6 (emphasis added). That definition did not purport to be comprehensive, but it plainly indicated that the court was adhering to the distinction that had developed in the common law between "purely economic losses," on the one hand, and damages for physical injuries to person or property, on the other. The logic of defendants' position would eliminate that distinction.[4]

Here, plaintiffs seek recovery because defendants' negligence caused dry rot in the apartment building that plaintiffs own. The allegations in the complaint are thus quite different from the kinds of damages that this court has characterized as "economic losses" in other cases—the reduced stock price in *Oregon Steel Mills*, the monetary gift to a beneficiary in *Hale*, or the "indebtedness incurred or return of monies paid" in *Onita Pacific Corp.* Plaintiffs here seek recovery for physical damage to their real property, and this

---

[4] That is not to say that defendants' argument does not expose tensions within the economic loss doctrine as it has developed. As the Court of Appeals noted, following Professor James, the reasons for the different treatment of indirect economic loss and physical damage " 'do not derive from the theory or the logic of tort law.' " *Harris*, 209 Or App at 422 (quoting James, 25 Vanderbilt L Rev at 44). Professor James identifies a "pragmatic objection" to recovery for economic losses that supports the common-law economic loss doctrine, but he also describes the limits of that objection and therefore the limits of the scope of the economic loss doctrine. 25 Vanderbilt L Rev at 48-58.

court's cases generally permit a property owner to recover in negligence for damages of that kind.

As noted, defendants also argue that, even if the dry rot could be characterized as "property damage" with respect to the person for whom defendants built the apartment building, it was not damage to *plaintiffs'* property, because plaintiffs purchased the property long after any negligent act by defendants. Any damage to plaintiffs, defendants maintain, was purely economic. Plaintiffs respond that this court addressed that issue in *Newman*, when it held that a class of townhouse owners could maintain a negligence action against the builder of the townhouses, even though they had not purchased the townhouses directly from the builder. In *Newman*, the trial court certified a class of owners that *had* purchased directly from the builder but declined to certify a class of subsequent buyers, the "nonprivity owners." Both rulings were appealed. This court affirmed certification of the class of privity owners and reversed the trial court's decision not to certify the class of nonprivity owners, stating, "We hold the nonprivity owners can prevail if they can prove the defendant was negligent." 287 Or at 52. Plaintiffs argue that *Newman* is directly on point and supports their view that a building owner can bring a negligence action against the builder, even if the owner did not own the building at the time of the builder's negligence. In defendants' view, *Newman* dealt only with class certification and whether lack of privity could be a defense to a negligent construction claim—and not with the economic loss doctrine, which, defendants assert, had not yet been established in Oregon.

Defendants are correct that *Newman* did not discuss the economic loss doctrine by name. The facts of the case, however, are almost identical to those here, and the necessary implication of *Newman*, as the Court of Appeals recognized, is that the economic loss doctrine did not bar the plaintiffs' claims. The plaintiffs in *Newman* sought damages from the builder for the cost of the repair and replacement of galvanized water pipes that were deteriorating, alleging negligence and breach of warranty. 287 Or at 49. As discussed above, although this court had recognized the substance of the economic loss doctrine a decade earlier, the court did not view that concept as barring a negligence action against the

builder by a subsequent purchaser. The only conclusion that one can draw from *Newman* is that this court considered the nonprivity owners' damage claim there—like plaintiffs' damage claim here—to be property damage that could provide the basis for a negligence action, rather than a purely economic loss for which defendants could not be liable, absent a special relationship with the plaintiffs. If we were to accept defendants' argument, we would have to overrule *Newman*. We decline to do so.

This case, like *Newman*, also illustrates why the concerns that underlie the economic loss doctrine are not implicated when, as here, the focus of the claimed negligence is on physical damage to property. As discussed above, this court has identified the potentially limitless economic impacts of negligent conduct as the reason for barring claims for economic losses. That concern, however, is rarely present when the claim is for physical damage to real or other tangible property. Unlike economic losses to third parties, which can be indeterminate and potentially unlimited, physical damage to property ordinarily can be ascertained, assessed, and paid. Once a party has paid damages related to the physical injury to property caused by its negligence, its liability is at an end. Plaintiffs do not assert—and, indeed, affirmatively reject—the idea that defendants can or should be liable to more than one subsequent purchaser for the same damage to property. As plaintiffs put it, "The builder can only be liable for the physical damages his negligence causes. Those damages can never be more than the costs of repairing the building or damage to a particular physical item."

Defendants posit various hypothetical situations in which a defendant that negligently damaged property would have to pay each successive owner of the property for that same damage, resulting in liability "unlimited in both time and amount." Defendants' concerns are exaggerated. In our view, doctrines such as claim preclusion, contribution, comparative fault, and mitigation of damages will be available in appropriate circumstances to avoid the obvious unfairness of subjecting a defendant to repeated lawsuits seeking recovery for the same negligent act and the same property damage.[5]

---

[5] In suggesting that defendants' concerns may be overstated, we do not claim that they are completely unfounded. Certainly, the cost of defending possible

Several *amici* aligned with defendants argue that, because the original purchaser could bring only a contract, and not a negligence, action against the builder, to allow plaintiffs to maintain a negligence action here would lead to the anomalous result that a subsequent purchaser of the property would have "more" rights against the builder than the person for whom the builder constructed the building. They also assert, more generally, that a builder's obligations and the scope of its liability are better addressed through contractual terms, rather than *post hoc* litigation. *Amici* aligned with plaintiffs, in contrast, ask us to hold that an initial purchaser that has a contract with a builder may bring a negligence claim against the builder in addition to a contract claim and without alleging a special relationship. We decline to address those issues. Certainly, contracts between builders and initial purchasers (and between initial purchasers and subsequent purchasers) play a critical role in determining legal rights and liabilities, and contractual negotiations are a preferred method of establishing parties' respective obligations. This case, however, does not involve a contract, nor is it an action by an initial purchaser against a builder, and the arguments the various *amici* advance, while important and interesting, simply go beyond what is at issue here.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

claims by successor purchasers, the complexity of construction litigation generally, and the need to protect contractual expectations, require the courts to exercise care in ensuring that builders are not subjected to multiple recoveries for their negligence. Professor Jones, for example, argues that the right balance will be struck if builders are held liable to subsequent purchasers on the theory that the initial purchaser assigned to the subsequent purchaser the builder's implied warranty of good workmanship. William K. Jones, *Economic Losses Caused by Construction Deficiencies: The Competing Regimes of Contract and Tort*, 59 U Cin L Rev 1051, 1077-83 (1991). In his view, the "vague contours of negligence doctrine" make it ill-suited as a theory for a subsequent purchaser's claim against a builder. *Id.* at 1082. Suffice it to say that the complaint in this case alleged negligence, not breach of warranty, and our prior cases support the result that we reach.