Argued and submitted May 16, reversed and remanded December 24, 2008

Loren J. WAXMAN
and Pamela J. Vernon,
*Plaintiffs-Appellants,*

*v.*

WAXMAN & ASSOCIATES, INC.,
an Oregon corporation,
*Defendant-Respondent.*

Multnomah County Circuit Court
050910112; A132602

198 P3d 445

Peter J. Viteznik argued the cause for appellants. With him on the briefs were Kyle D. Sciuchetti, Lisa E. Lear, and Bullivant Houser Bailey PC.

Matthew J. Kalmanson argued the cause for respondent. On the brief were Janet M. Schroer and Hoffman, Hart & Wagner, LLP.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Plaintiffs, who are owners of one of four connected row houses, appeal, challenging the dismissal, on summary judgment, of their tort and contract claims against defendant, the builder/developer, to recover their share of costs associated with the repair of certain construction defects in the common elements of the building. Plaintiffs contend, principally, that the trial court erred (1) in concluding that the "economic loss" doctrine bars plaintiffs' negligence claims, (2) in concluding that plaintiffs' contract claims are barred by the six-year statute of limitations set forth in ORS 12.080(1), and (3) in failing to give preclusive effect in this case to an earlier arbitration award in favor of the owner of another of the row houses. As explained below, we conclude that the trial court erred in determining that the economic loss doctrine bars plaintiffs' negligence claims. However, we also conclude that the court correctly held that plaintiffs' contract claims are barred by the statute of limitations and that the arbitration award cannot be given preclusive effect. Consequently, we affirm the dismissal of the contract claims, reverse the dismissal of the tort claims, and remand for further proceedings.

The material facts are not in dispute. In the mid-1990s, defendant developed and built four row houses.[1] After completing construction, defendant sold the row houses to Jean Slyman, Sharolyn Shearer, Julie Bussing, and Ruth and Douglas Menely (referred to collectively as the original purchasers). The Menelys sold their row house to plaintiffs in 2001.

There were significant construction defects in the common elements of the row houses, necessitating extensive repairs. The row houses are subject to covenants, conditions, and restrictions, which give each row house owner a 25 percent ownership interest in and responsibility for the common elements. As a result, the four property owners at the time of the repairs, Slyman, Shearer, Bussing, and plaintiffs, were each responsible for 25 percent of the repair bill.

---

[1] Although the precise dates are not apparent, the record indicates that construction occurred primarily in 1996 and 1997.

The purchase agreements between defendant and the original purchasers required that unresolved claims be submitted to arbitration. In October 2004, the row house owners filed an arbitration claim against defendant, seeking damages associated with the construction defects. Defendant filed an answer in the arbitration that, among other things, challenged plaintiffs' eligibility to participate in the arbitration, contending that there was no arbitration agreement between plaintiffs and defendant. After initiation of the arbitration proceeding, the Menelys and plaintiffs executed an agreement captioned "Addendum to Real Estate Sales Agreement" (the assignment) in which the Menelys purported to assign to plaintiffs all claims and causes of action arising from the construction of the row houses.

While the arbitration proceeding was underway, defendant filed suit in circuit court against some of the subcontractors that participated in the building of the row houses. In the context of that action, defendant (as a plaintiff there) sought a declaration that plaintiffs could not participate in the arbitration with the other row house owners because plaintiffs had not been parties to the original purchase agreement, which included the arbitration clause. The circuit court in that action ultimately held that plaintiffs were not eligible to participate in the arbitration. Thereafter, defendant settled with Shearer and Slyman, but Bussing proceeded to arbitration on her claims. In October 2005, following a full evidentiary hearing, the arbitration panel awarded Bussing a money judgment, costs, and attorney fees.

Meanwhile, in September 2005, plaintiffs filed a complaint against defendant in circuit court to recover their portion of the repair costs, asserting claims for negligence and breach of contract. The parties filed cross-motions for summary judgment. Defendant argued that it was entitled to summary judgment on plaintiffs' negligence claims because, among other things, those claims were barred by the economic loss doctrine. With regard to plaintiffs' contract claims, defendant argued that it had no contractual duty to plaintiffs, because the assignment from the Menelys was ineffective. Defendant also argued that, even if the assignment was

effective, the applicable statute of limitations barred plaintiffs' contract claims. Plaintiffs, while disputing those arguments, further maintained that they were entitled to partial summary judgment because defendant was "precluded from re-litigating its legal responsibility for the damages" by virtue of the arbitration award.

The trial court granted defendant's motion for summary judgment and denied plaintiffs' cross-motion for partial summary judgment. The court concluded that plaintiffs' negligence claims were barred by the economic loss doctrine and that their contract claims were barred by the statute of limitations. In denying plaintiffs' cross-motion for partial summary judgment, the trial court refused to give preclusive effect to the arbitration award, stating that it could not determine on what basis—contract or tort—the panel had awarded Bussing damages.

We review a grant of summary judgment "to determine whether any genuine issue of material fact exists and whether defendant is entitled to judgment as a matter of law." *Herman v. Valley Ins. Co.*, 145 Or App 124, 127-28, 928 P2d 985 (1996), *rev den*, 325 Or 438 (1997). Because the material facts are undisputed, this appeal presents only legal issues, which we review for errors of law. *Bunnell v. Dalton Construction, Inc.*, 210 Or App 138, 142, 149 P3d 1240 (2006), *rev den*, 344 Or 558 (2008).

For the reasons that follow, we reverse the allowance of summary judgment in part and affirm in part. We also affirm the trial court's denial of plaintiffs' cross-motion for partial summary judgment. In particular, we conclude that the trial court erred in determining that the economic loss doctrine bars plaintiffs' negligence claims. However, the court correctly concluded that plaintiffs' contract claims are barred by the statute of limitations and that the arbitration award cannot be given preclusive effect *vis-à-vis* plaintiffs' tort claims, which are the only viable claims remaining.

We turn to the trial court's application of the economic loss doctrine to plaintiffs' tort claims. That doctrine provides that, in the absence of a special relationship, a party that has suffered purely economic loss may not bring a negligence action against the party that caused such loss. *See,*

*e.g., Onita Pacific Corp. v. Trustees of Bronson,* 315 Or 149, 159, 843 P2d 890 (1992). After the trial court's decision in this case, the Supreme Court issued its decision in *Harris v. Suniga,* 344 Or 301, 180 P3d 12 (2008). In *Harris,* the court held that a claim against a contractor for physical damage to property caused by allegedly negligent construction is not barred by the economic loss doctrine, because such damage does not constitute a purely economic loss. 344 Or at 310-11.

On this record, the facts of *Harris* are materially indistinguishable from those in this case. Consequently, we reverse the trial court's dismissal of plaintiffs' tort claims and remand for further consideration of those claims.[2]

We proceed to the propriety of allowing summary judgment against plaintiffs' breach of contract claims. The trial court, as noted, concluded that those claims were barred by the six-year statute of limitations set forth in ORS 12.080(1), rejecting plaintiffs' argument that a 10-year statute of limitations applies under ORS 12.135.[3] The trial court also rejected plaintiffs' alternate argument that ORS 12.080(1) is subject to a discovery rule. For the following reasons, we agree with the trial court in both respects.

■■ We first consider the question of the applicable statute of limitations—*viz.,* the proper relationship between ORS 12.080(1) and ORS 12.135. Our task in interpreting a statute is to discern the intent of the legislature. *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610, 859 P2d 1143 (1993).

> "In [the] first level of analysis, the text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent."

[2] On appeal, plaintiffs also assign error to the trial court's denial of their motion, pursuant to ORCP 23 A, to amend their complaint to add certain project subcontractors as additional defendants. We need not address the correctness of the trial court's discretionary ruling in that regard because the case is being remanded in all events and, if plaintiffs seek leave to add additional parties as defendants on remand, the circumstances bearing on the trial court's consideration of such a motion may well be materially different from those that informed the challenged ruling.

[3] The parties' disagreement centers on the applicable period of limitation. There is no dispute that plaintiffs' action is untimely if a six-year statute of limitations applies and timely if a 10-year statute applies.

*Id.* However, the text of a statute should not be read in isolation. We must also, in the first level of analysis, consider the statutory context. *Id.* at 611. "If the legislature's intent is clear from the * * * inquiry into text and context, further inquiry is unnecessary." *Id.* However, if legislative intent remains unclear, we move to the second level of analysis, in which we examine legislative history. *Id.* at 611-12. A statute is ambiguous if it is susceptible to more than one reasonable interpretation. *State v. Cooper*, 319 Or 162, 167, 874 P2d 822 (1994). A reasonable interpretation is one that is not "wholly implausible." *Owens v. MVD*, 319 Or 259, 268, 875 P2d 463 (1994); *Filipetti v. Dept. of Fish and Wildlife*, 224 Or App 122, 130, 197 P3d 535 (2008).

■ ORS 12.080(1) provides:

"An action upon a contract or liability, express or implied, excepting those mentioned in ORS 12.070, 12.110 and 12.135 and except as otherwise provided in ORS 72.7250 * * * shall be commenced within six years."

Plaintiffs' position is that, because of the reference to ORS 12.135 in ORS 12.080(1), a 10-year statute of limitations applies to their contract claims.[4] ORS 12.135 provides, in pertinent part:

"(1) An action against a person, whether in contract, tort or otherwise, arising from such person having performed the construction, alteration or repair of any improvement to real property or the supervision or inspection thereof, or from such person having furnished the design, planning, surveying, architectural or engineering services for such improvement, shall be commenced within the applicable period of limitation otherwise established by law; but in any event such action shall be commenced within 10 years from substantial completion or abandonment of such construction, alteration or repair of the improvement to real property.

"(2) Notwithstanding subsection (1) of this section, an action against a person for the practice of architecture, as

_____

[4] Plaintiffs do not argue that any one of the other statutes listed in ORS 12.080(1) is relevant to this appeal.

defined in ORS 671.010, the practice of landscape architecture, as defined in ORS 671.310, or the practice of engineering, as defined in ORS 672.005, to recover damages for injury to a person, property or to any interest in property, including damages for delay or economic loss, regardless of legal theory, arising from the construction, alteration or repair of any improvement to real property shall be commenced within two years from the date the injury or damage is first discovered or in the exercise of reasonable care should have been discovered; but in any event the action shall be commenced within 10 years from substantial completion or abandonment of the construction, alteration or repair."

The trial court concluded that the six-year statute of limitations under ORS 12.080(1) applies—and that the reference to "ORS 12.135" in ORS 12.080(1) is "necessarily" only to subsection (2) of ORS 12.135.

At first glance, the text of ORS 12.080(1) appears to support plaintiffs' interpretation, because ORS 12.080(1) refers to "ORS 12.135," not just subsection (2) of that statute. However, a careful reading and contextual analysis of the interplay between ORS 12.080(1) and ORS 12.135 demonstrates that the trial court's interpretation is correct.

■ Plaintiffs' argument that the interplay between ORS 12.080(1) and ORS 12.135 gives rise to a 10-year *statute of limitations* is based on a false premise. ORS 12.135 does not provide for a 10-year statute of limitations in any circumstance. Rather, the only 10-year period described in ORS 12.135(1) and (2) is a statute of *ultimate repose*, and not a statute of limitations. *See Lozano v. Schlesinger*, 191 Or App 400, 404, 84 P3d 816 (2004).

■ A statute of limitations requires that a plaintiff commence an action within a specified time after his or her claim has accrued or the claim will be barred. A statute of limitations may be tolled in certain circumstances. Conversely, statutes of ultimate repose establish "maximum times to file a claim, regardless of the date of discovery of an injury or other circumstances that may affect the expiration of a statute of limitations." *Shasta View Irrigation Dist. v. Amoco*

*Chemicals*, 329 Or 151, 162, 986 P2d 536 (1999). "The legis-lature enacts statutes of ultimate repose to supplement applicable statutes of limitations." *Id.*

The structure of subsection (2) of ORS 12.135 exem-plifies the distinction between statutes of ultimate repose and statutes of limitations. Subsection (2) of ORS 12.135 first prescribes a two-year statute of limitations:

> "Notwithstanding subsection (1) of this section, an action against a person for the practice of [architecture, landscape architecture, or engineering], to recover damages for injury to a person, property or to any interest in property * * * arising from the construction, alteration or repair of any improvement to real property shall be commenced within two years from the date the injury or damage is first discov-ered or in the exercise of reasonable care should have been discovered * * *."

In addition, subsection (2) prescribes a 10-year statute of ulti-mate repose for such actions: "[B]ut in any event the action shall be commenced within 10 years from substantial com-pletion or abandonment of the construction, alteration or repair." ORS 12.135(2).

Like ORS 12.135(2), ORS 12.135(1) includes a 10-year statute of ultimate repose that is phrased in virtually identical language. However, unlike subsection (2), subsec-tion (1) does not establish a "free-standing" statute of limita-tions. Rather, subsection (1) provides that an action (like this) "in contract, tort or otherwise," arising from, *inter alia*, "the construction * * * of any improvement to real property," *"shall be commenced within the applicable period of limita-tion otherwise established by law*[.]" (Emphasis added.) It is the latter, italicized feature of ORS 12.135(1) that demon-strates that the reference to "ORS 12.135" in the exception clause of ORS 12.080(1) must pertain to ORS 12.135(**2**)— and, specifically, the two-year statute of limitations for spe-cialized actions, *viz.*, against architects, landscape architects, or engineers, pursuant to that subsection.

If the reference to "ORS 12.135" in ORS 12.080(1) pertained to ORS 12.135(**1**), then those two provisions would, in combination, be endlessly circular: Actions under ORS

12.135(1) would not be subject to the six-year general contractual statute of limitations, but claims in actions under ORS 12.135(1), including breach of contract claims, are, in turn, subject to the "applicable period of limitation otherwise established by law"—which, ordinarily, would be the six-year period prescribed in ORS 12.080(1). The result would be the statutory equivalent of "Alphonse and Gaston": "After you. No, my dear fellow, after *you*."[5]

█ Such a construction does not comport with our "obligation to give full meaning and effect to all relevant statutory provisions" when construing statutes. *City of Eugene v. Nalven*, 152 Or App 720, 725-26, 955 P2d 263, *rev den*, 327 Or 431 (1998). *See* ORS 174.010 (in construing statute, "where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all"). Certainly, the most plausible manner—and perhaps the only plausible manner—of reconciling ORS 12.080(1) and ORS 12.135 in a way that meets that obligation is to conclude that the legislature intended the reference to "ORS 12.135" in ORS 12.080(1) to refer only to ORS 12.135(2).

When ORS 12.080(1) and ORS 12.135 are read together in that way, a coherent statutory scheme emerges. ORS 12.135(1) dictates that, as a general rule, the statute of limitations applicable to a construction defect claim is the "applicable period of limitation otherwise established by law," which is determined by the nature of the claim asserted. In this case, because the pertinent claims are contract claims, the applicable statute of limitation is the six-year period generally applicable to contract claims under ORS 12.080(1). Subsection (2) of ORS 12.135, which applies "[n]otwithstanding subsection (1)" of that statute, creates a limited exception to the general rule by making applicable a two-year statute of limitations for construction defect claims against the specified professionals—architects, landscape

---

[5] For readers of a different generation, "Alphonse and Gaston" were two characters, first in comic strips and vaudeville, and later in cartoons, who were synonymous with exaggerated politeness or deference. The quintessential Alphonse and Gaston scenario was one in which the two reached a door simultaneously and never crossed the threshold because each was continually deferring to the other. Perhaps the most memorable of those portrayals was a parody in Warner Brothers' cartoons of Mac 'n Tosh, two absurdly polite gophers.

architects, and engineers. In those cases, the limitation period is determined by the identity of the defendant, not the nature of the claim. Thus, the specialized subset of construction-related contract claims described in ORS 12.135(2) is not subject to the six-year general limitations period of ORS 12.080(1)—and, in fact, must be commenced within a much shorter period. Conversely, other construction-related contract actions, as described in subsection (1), are not excepted from, and are subject to, the six-year limitation prescribed in ORS 12.080(1).

To be sure, the matter would be patent if ORS 12.080(1) referred to "ORS 12.135(2)," and not "ORS 12.135." Nevertheless, to the extent any ambiguity remains, the historical development of ORS 12.080(1) and ORS 12.135, and the legislative history associated with that evolution, conclusively corroborate our construction.[6]

ORS 12.135, as enacted in 1971, established a two-year statute of limitations for

> "[a]n action to recover damages for injuries to a person or to property arising from another person having performed the construction, alteration or repair of any improvement to real property or the supervision or inspection thereof, or from such other person having furnished the design, planning, surveying, architectural or engineering services for such improvement * * *."

ORS 12.135(1) (1971). After the enactment of ORS 12.135, litigation ensued over the proper scope of application of the two-year statute of limitations. One of the main areas of dispute concerned whether the two-year statute of limitations set forth in ORS 12.135 applied to contract claims, in addition to tort claims. *See, e.g.*, *Housing Authority of Portland v. Ash Nat'l*, 36 Or App 391, 584 P2d 776 (1978).

In 1983, the legislature passed Senate Bill 663, which amended ORS 12.135(1) by eliminating the two-year statute of limitations and clarifying that actions for damages arising from the construction, alteration or repair of real property, "whether in contract, tort or otherwise, * * * shall

---

[6] Historical changes in the text of a statute provide context for the interpretation of the version at issue. *Krieger v. Just*, 319 Or 328, 336, 876 P2d 754 (1994).

be commenced within * * * the applicable period of limitation otherwise established by law[.]" Or Laws 1983, ch 437, § 1. The legislative history of SB 663 includes explicit legislative expressions of the intent that the six-year statute of limitations set forth in ORS 12.080(1) would apply to contract claims arising from the construction, alteration, or repair of real property. *See* Tape Recording, Senate Committee on Judiciary, SB 663, May 18, 1983, Tape 153, Side A (statement of Sen Jan Wyers).

In 1991, the legislature passed Senate Bill 722, which added the current version of subsection (2) to ORS 12.135. Or Laws 1991, ch 968, § 1. That provision reinstated the two-year statute of limitations for damages arising from the construction, alteration, or repair of real property, but only as to claims against architects, landscape architects, and engineers. As part of the same act, the legislature also amended ORS 12.080(1) to add the exception for actions "mentioned in" ORS 12.135. In the same session, the legislature rejected an earlier version of the bill that would have imposed a two-year statute of limitations for all claims arising from the construction, alteration, or repair of real property "regardless of legal theory." *See* Senate Judiciary Committee, SB 722, May 6, 1991, Exs B, C (amendments and hand engrossed bill).

In sum, the historical development and associated legislative history of the two statutes at issue in this appeal demonstrate that the trial court was correct when it determined that the legislature intended to except from ORS 12.080(1) only those actions specified in subsection (2) of ORS 12.135. We thus conclude that the applicable statute of limitations for plaintiffs' contract claims is the six-year period set forth in ORS 12.080(1).

■ We turn, then, to the question of whether, as plaintiffs contend, their contract claims may nevertheless be timely because ORS 12.080(1) incorporates a discovery rule. For the reasons explained below, we conclude that ORS 12.080(1) is not subject to a discovery rule.[7]

---

[7] Defendant argues that it would be entitled to summary judgment even if a discovery rule applied, because plaintiffs discovered, or reasonably should have discovered, their injury more than six years before they filed their complaint. We

■ "Whether [a] statute contains a discovery rule is a matter of legislative intent." *Gladhart v. Oregon Vineyard Supply Co.*, 332 Or 226, 230, 26 P3d 817 (2001). Consequently, we first examine the text and context of ORS 12.080(1) to determine whether the legislature intended to make a discovery rule applicable.

■ ORS 12.080(1) provides, in pertinent part, that "[a]n action upon a contract * * * shall be commenced within six years." A " 'discovery rule cannot be assumed, but must be found in the statute of limitations itself.' " *Gladhart*, 332 Or at 230 (quoting *Huff v. Great Western Seed Co.*, 322 Or 457, 462, 909 P2d 858 (1996)). Further, when the legislature intends to subject a statute of limitations to a discovery rule, it knows how to make its intent to do so clear. *See, e.g.*, ORS 12.135(2) (providing that specified actions "shall be commenced within two years from the date the injury or damage is first discovered or in the exercise of reasonable care should have been discovered"). Nothing in the text of ORS 12.080(1) suggests that the legislature intended to make a discovery rule applicable to actions for breach of contract.

Plaintiffs argue that, even if ORS 12.080(1) does not itself include a discovery rule, a discovery rule is, nevertheless, imported into ORS 12.080(1) by operation of ORS 12.010. ORS 12.010 provides that actions must be commenced "within the periods prescribed in this chapter, after the cause of action shall have accrued[.]" In *Berry v. Branner*, 245 Or 307, 421 P2d 996 (1966), the Supreme Court, referring to ORS 12.010, held that a tort claim for medical malpractice accrued at the time it was or might reasonably have been discovered, not at the time of the negligent act or omission. 245 Or at 315-16. Invoking *Berry*, plaintiffs argue that ORS 12.010 imposes a discovery rule for all actions under ORS chapter 12, which include those actions governed by ORS 12.080(1).

■ Plaintiffs' reliance on *Berry* is misplaced. *Berry* simply does not stand for the proposition that a discovery rule

do not consider that argument for two reasons. First, as explained below, we determine that ORS 12.080(1) does not incorporate a discovery rule. Second, defendant's argument implicates determinations of material fact that are not properly rendered in this context.

applies to all actions for which ORS 12.010 is implicated. Although ORS 12.010 provides that an action must be commenced within the applicable period after the cause of action accrues, it is well settled that a contract claim accrues on breach. *Vega v. Farmers Ins. Co.*, 134 Or App 372, 376, 895 P2d 337 (1995), *aff'd*, 323 Or 291, 918 P2d 95 (1996). The one exception to that rule applies in cases of fraudulent concealment. *Chaney v. Fields Chevrolet*, 264 Or 21, 27, 503 P2d 1239 (1972); *Bruns v. Walters*, 175 Or App 360, 365, 28 P3d 646 (2001). In such cases, the statute of limitations will be tolled until the plaintiff discovered, or reasonably should have discovered, the breach. *Chaney*, 264 Or at 27. *Chaney* and *Bruns* were decided well after *Berry*. There would be no need for a special rule tolling the statute of limitations in cases involving fraudulent concealment if, as plaintiffs contend, *Berry* imposes a discovery rule for all claims governed by ORS chapter 12, including those to which ORS 12.080(1) applies.

Plaintiffs argue that the 10-year statute of repose set forth in ORS 12.135(1) will be rendered meaningless if ORS 12.080(1) is not subject to a discovery rule "because all such claims would expire six years after entering into a contract." Plaintiffs are wrong. First, as noted, the statute of limitations runs from the date of breach, not the date of the contract. Second, the six-year statute of limitations may be tolled in certain cases, *e.g.*, those involving fraudulent concealment of the breach.

In sum, the applicable statute of limitations for plaintiffs' contract claims is, without a discovery rule, six years from the date of breach. Plaintiffs did not bring this action within that time. Accordingly, the trial court properly dismissed those claims.[8]

We turn, finally, to the question of whether the Bussing arbitration award should—and, indeed, must—be

---

[8] Given our analysis and disposition with respect to the breach of contract claims, we need not, and do not, address plaintiffs' assertion that the trial court erred in failing to determine the validity of their assignment from the Menelys. To the extent that questions regarding the validity of the assignment arise in the context of the remand of plaintiffs' tort claims, the trial court can address those questions in that posture.

given preclusive effect with regard to the issue of defendant's liability for plaintiffs' tort claims, which are the only viable claims remaining in this case. We conclude, as did the trial court, that the arbitration award cannot be given preclusive effect.

 There are five requirements for issue preclusion:

"1. The issue in the two proceedings is identical.

"2. The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.

"3. The party sought to be precluded has had a full and fair opportunity to be heard on that issue.

"4. The party sought to be precluded was a party or was in privity with a party to the prior proceeding.

"5. The prior proceeding was the type of proceeding to which this court will give preclusive effect."

*Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993) (citations omitted). Assuming, without deciding, that the other requirements for application of issue preclusion are met, plaintiffs' argument fails because the second requirement is not satisfied in this case.

We cannot determine that the issue of defendant's liability *in tort* for the construction defects was "actually litigated" in the arbitration and was "essential" to the panel's award. *Id.* at 104. The arbitration clause in the purchase agreement between Bussing and defendant applies to "all claims, controversies and disputes * * * relating directly or indirectly to" the purchase agreement. We assume, without deciding, that Bussing's tort claims against defendant in the arbitration were "identical" to those that plaintiffs pursue here. *Id.* However, Bussing raised both tort *and* contract claims against defendant—and the arbitration award itself does not specify the basis upon which the panel awarded damages to Bussing. Nor have plaintiffs identified anything in the totality of the arbitration proceedings and consequent award that demonstrates that the award was, in fact, based on Bussing's tort claims, instead of her contract claims.[9]

---

[9] For example, the arbitrators' award of damages could be consistent with an award based solely on Bussing's tort claims, or solely on her contract claims, or on some combination of both.

Bluntly: We cannot tell. Because it is not possible to determine the legal basis of the arbitration award, the trial court did not err in refusing to give preclusive effect to the arbitration panel award.

Reversed and remanded.