Argued and submitted July 11, affirmed December 18, 2013, petition for review denied May 8, 2014 (355 Or 380)

Duncan HETTLE,
*Petitioner,*

*v.*

CONSTRUCTION CONTRACTORS BOARD;
and Homemasters, Inc.,
dba Gutter Helmet of Oregon,
*Respondents.*

Construction Contractors Board
171009101; A142840

316 P3d 344

Thaddeus J. Hettle argued the cause for petitioner. With him on the briefs was Hettle & Associates.

Rebecca M. Johansen, Assistant Attorney General, argued the cause for respondent Construction Contractors Board. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

No appearance for respondent Homemasters, Inc.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

Complainant filed a claim with the Construction Contractors Board (the board) against Homemasters, Inc. (respondent), alleging that respondent performed negligent and improper work in connection with examining windows in a home that complainant was preparing to purchase and providing an opinion about related damage. Complainant seeks judicial review of a final board order, which dismissed his complaint and concluded that complainant had failed to state a claim for relief for negligent or improper work pursuant to ORS 701.140[1] and OAR 812-004-0535(1)(b).[2] We conclude that the board did not err in dismissing the claim and affirm.

We review the board's findings of fact for substantial evidence; that is, we must determine whether the record, viewed as a whole, would permit a reasonable person to make the factual findings that the board made. ORS 183.482(8)(c). We review the board's legal conclusions for errors of law and substantial reason. The latter requires us to determine whether the board's "findings of fact logically lead to its conclusions of law." *Goin v. Employment Dept.*, 203 Or App 758, 763, 126 P3d 734 (2006).

Because, as we explain below, we reject complainant's challenges to the board's factual findings, we state the facts consistently with the board's Final Order on Second Reconsideration (final order).

In April 2007, complainant was negotiating with Schlottman (seller) to purchase seller's house. Licensed residential inspector McLean inspected the house and wrote a report noting, in part:

> "#5: Windows - Water Intrusion - Sills of windows in S.E. bedroom show swelling; sills of windows in den below this room also show swelling and one window shows water damaged paint on its die casing - Indications of water

---

[1] We set out ORS 701.140(1) and OAR 812-004-0535(1) below. 260 Or App at 143-44.

[2] The Oregon Administrative Rules to which we cite in this case have been amended since the institution of this case. Because we conclude that the November 15, 2007, version of the Oregon Administrative Rules applies here, we cite to that version of the rule throughout this opinion.

intrusion, possible rot damage, mold etc., in walls. Consult qualified specialty contractor to evaluate and remediate water intrusion as deemed appropriate."

Based on that report, complainant and seller entered into a "Buyer's Repair Addendum," in which the parties agreed that seller would remove the moss on the roof and have a "[l]icensed and bonded contractor *** identify and correct [the] source of [the] water intrusion per item 5 of inspection and identify and repair/replace and paint all water damaged areas."

Seller contacted respondent to clean the roof and gutters. When respondent's corporate president, Richard Lundstrom, visited the house to check on the work performed, seller requested that he look at two windows on the southeast corner of the house. Seller and seller's real estate agent, Raja, were present when Lundstrom inspected the windows from the interior of the house only. Lundstrom assisted seller in removing the window sills and sheetrock beneath one of the windows, and seller took pictures of the wood underneath the sills.

Lundstrom later wrote a letter to seller, dated April 25, 2007, on respondent's corporate letterhead, but Lundstrom had not seen a copy of either the Buyer's Repair Addendum or the initial inspection report before writing the letter. The letter, written at seller's request, reads:

"On April 25, 2007[,] I removed the window sills in both the upstairs front bedroom and the main floor front room ***. Neither window has water damage. The visual surface problem was contained to the *** window sill and it would be my recommendation to replace the *** bottom sill of both windows.

"There is absolutely no mold, dry rot[,] or other damage."

At the request of complainant's realtor, Lundstrom later added the following paragraph to the letter:

"The visual problem with the sheetrock around the front window is of no concern. My recommendation would be to remove, retexture and reapply paint in the area."

Based on those recommendations, seller had the drywall repaired and the window sills replaced.

In May 2007, complainant purchased, and moved into, the house. In October 2007, after a heavy rain, complainant found water leaking into the upstairs window. In December 2007, he discovered water leaks around the downstairs window. Complainant then filed a complaint with the board against respondent, alleging that respondent performed improper and negligent work on his house, pursuant to OAR 812-004-0535(1), and seeking monetary damages. The board dismissed the complaint, concluding that respondent did not perform negligent or improper work. Complainant thereafter requested a hearing.

At the hearing, complainant testified that he had received the April 25, 2007, letter from seller, who had had the window sills replaced and interior carpentry work done based on the recommendations contained in the letter.

Complainant's realtor testified that, because seller's realtor, Raja, had told him that the April 25, 2007, letter satisfied the requirements of the Buyer's Repair Addendum, he believed that Lundstrom had inspected the windows per the terms of the addendum.

Raja stated that she was present when Lundstrom examined the windows and felt that Lundstrom's inspection satisfied the terms of the addendum. She also believed that seller had hired respondent, a licensed and bonded contractor, to satisfy the requirements of the Buyer's Repair Addendum.

Seller testified that he had asked Lundstrom to inspect the windows and that he had supplied pictures of the window sills to complainant after the repairs were complete. Seller noted that complainant declined to have the repairs inspected by a third party.

Complainant called two licensed residential real estate inspectors to testify. The first, McLean, had initially identified the potential water damage. Before the hearing, McLean examined the photos taken by seller in April 2007 while the window sills were removed. He opined that the pictures showed staining and darkening from water damage that had occurred over a period of time. The second inspector, McMullen, testified that he had noticed construction

defects near the windows as he approached the house for the first time. McMullen determined that water had leaked in around the upper window and then ran down the wall cavity, which compounded the effects of a similar leak on the lower window. He found that flashing had not been installed and that the decorative trim near the window was angled toward the house, worsening the leakage problem. McMullen opined that a proper investigation of the source of the water intrusion would require an investigation of the house's exterior and that Lundstrom's inspection was inadequate.

Lundstrom testified that seller contacted his company to obtain roof cleaning services. Lundstrom recalled that seller "needed to have [the window] looked at" because it "had some water intrusion." Lundstrom initially agreed to look at the window because he believed that seller thought that respondent's pressure washing had caused the window leak. After looking at the windows, seller asked his opinion, and Lundstrom responded that he did not think it was a problem. Seller mentioned to Lundstrom that the window had been left open and that he had never noticed any leaks. Lundstrom did not think it was necessary to view the exterior because the sill did not look damaged. Lundstrom spent approximately 15 minutes examining the windows and did not view the exterior of the house. Lundstrom stated that he never saw an inspection report, never had any conversations with complainant, and had "no idea" that complainant was going to rely on his opinion. Lundstrom did not provide any verbal or written warranties, and suggested to seller that "they hire somebody to have [the window] looked at * * * while [the wall] was open." Lundstrom explained that seller requested that he draft the April 25, 2007, letter, and complainant's realtor subsequently asked Lundstrom to insert the new paragraph. Lundstrom denied that he had been asked to find the source of the water intrusion. He also stated that his opinion only pertained to the interior work, because seller had only asked him to remove sheetrock and the interior sill on two windows to confirm whether there was any "visual mold or dry rot moisture."

After the hearing, the administrative law judge (ALJ), on behalf of the board, issued a Proposed and Final Order, dismissing the complaint. The proposed order

determined that the board had jurisdiction—under ORS 701.140 and OAR 812-004-0320(5)(d)—because complainant had purchased property "conditioned on an inspection report" by respondent, but concluded that complainant had not (1) established detrimental reliance under the doctrine of equitable estoppel or (2) proved that Lundstrom had caused any damages, as required by ORS 701.140(1) and OAR 812-004-0535(1)(b).

Complainant filed exceptions to parts of the ALJ's proposed findings of fact, relying, in part, on testimony from the hearing. The board issued a final order in May 2009 (2009 final order), concluding that complainant's exceptions were meritless. In the 2009 final order, the board amended and adopted the ALJ's findings. After complainant petitioned for judicial review, the board withdrew the 2009 final order and issued a Final Order on Reconsideration, dismissing the complaint because complainant had "failed to establish that [r]espondent had a duty of care beyond his contractual obligations and had failed to establish that [r]espondent had breached his contractual obligations or performed improper work on his contractual obligations." Complainant again filed a notice of intent to seek judicial review. Before briefing was complete, the Oregon Supreme Court issued *Abraham v. T. Henry Construction, Inc.*, 350 Or 29, 249 P3d 534 (2011), and the board withdrew its Final Order on Reconsideration to "address the effect of *Abraham* on the board's analysis."

In March 2012, the board issued the final order at issue here, dismissing the complaint based on another legal ground. The board adopted the ALJ's findings of fact, and made several additional factual findings, which it added to the order.[3] The board also incorporated the text of Lundstrom's April 25, 2007, letter into its factual findings. *See* 260 Or App at 138 (quoting April 25, 2007, letter). Based on the ALJ's findings, and the facts it found independently, the board concluded that the record did not support a conclusion that "[r]espondent improperly performed the work that he contracted to perform." Further, the board concluded that the record did not support a conclusion that respondent

---

[3] We discuss those findings below, *see* 260 Or App at 145.

was negligent, because complainant had alleged purely economic losses but had failed to establish that a special relationship existed between complainant and respondent. Thus, the "economic loss" doctrine barred complainant's negligence claim. Based on those conclusions, the board dismissed the complaint for failing to state a claim for relief against respondent for negligent or improper work under ORS 701.140 and OAR 812-004-0535. Complainant sought judicial review of the final order.

On review, complainant first asserts that the board's refusal to consider testimony favorable to him impaired the fairness of the proceedings. The board responds that it properly refused to consider the oral evidence in complainant's exceptions when it adopted the ALJ's findings of fact, because complainant did not follow the board's procedural rules for challenging those findings.

When the ALJ issued the initial Proposed and Final Order, complainant filed exceptions to parts of the ALJ's factual findings, relying, in part, on testimony from the hearing. However, complainant did not provide a transcript of the hearing to support his exceptions, as required by OAR 812-009-0400(6)(c).[4] The board has the discretion to "refuse to consider evidence of oral testimony submitted by a party" if the party fails to comply with the procedural requirements of OAR 812-009-0400(6), including the requirement of providing a transcript. OAR 812-009-0400(8).

We do not substitute our judgment for that of the agency with regard to any issue of agency discretion, ORS 183.482(7), and therefore conclude that the board did not err in refusing to consider complainant's exceptions to the ALJ's findings.

Complainant next asserts that the board erred in finding that seller did not ask respondent for an opinion about

---

[4] After a contested case hearing, a party may file written exceptions to the proposed order, if that party believes that the proposed order is not supported by evidence received at the hearing. OAR 812-009-0400(1). If the "party filing exceptions intends to rely on oral testimony given at the hearing," that party must "prepare a typed transcript of the portions of the hearing testimony" that support the exceptions, and must "deliver the transcript to the agency [within] 21 days after the date the agency mails the tape of the hearing to the party." OAR 812-009-0400(6)(c).

water intrusion, only about interior damage. He argues that the board erred by "modifying" the ALJ's finding without identifying and explaining the modifications as is required under ORS 183.650(2) and OAR 137-003-0665(3). He also argues that the board's finding is not supported by substantial evidence. After a thorough review of the record, we reject that assignment of error without further discussion.

Complainant next challenges the board's conclusions that his complaint must be dismissed because (1) respondent's work was not improper and (2) the economic loss doctrine barred complainant's negligence claim for economic damages.[5]

OAR 812-004-0535(1) provides, in part:

"[I]n order for the agency to award damages to claimant the record of the claim must contain evidence that persuades the agency, arbitrator or administrative law judge that:

"(a)   Claimant suffered damages;

"(b)   [T]he [r]espondent caused those damages by acts or omissions within the scope of ORS 701.140; and

"(c)   The monetary value of those damages is substantiated on the record.

"(2)   The agency shall dismiss the claim if the evidence in the record of the claim does not persuade the agency, arbitrator or administrative law judge of the existence of the facts described in section (1) of this rule."

ORS 701.140, in turn, provides, in part:

"A complaint under ORS 701.139 [governing the board's authority over disputes] must arise from the performance * * * of work that requires a contractor license issued by the Construction Contractors Board. The complaint must be of one or more of the following types:

"(1)   A complaint against a contractor by the owner of a structure or other real property for the following:

---

[5] Neither party contends that the loss experienced in this case was not economic and, for that reason, no "special relationship" requirement existed. Because the parties do not raise this issue, we do not address it. *See Harris v. Suniga*, 344 Or 301, 310, 180 P3d 12 (2008) (defining "economic loss").

"(a)   Negligent work.

"(b)   Improper work."

Thus, to support an award of damages, the record must contain evidence that persuades the agency or ALJ that a complainant "suffered damages," that the "monetary value of those damages is substantiated on the record," and that the respondent caused those damages by acting or failing to act within the scope of ORS 701.140. OAR 812-004-0535(1)(a) - (c). As relevant here, "within the scope of ORS 701.140" refers to complaints alleging "improper work" and "negligent work." ORS 701.140(1)(a), (b).

Complainant first challenges the board's dismissal of his complaint regarding his assertion of "improper work." He contends that certain pertinent facts found by the board are not supported by substantial evidence and that its analysis is not supported by substantial reason.

The board argues that we should not reach complainant's arguments regarding the "improper work" claim, because he has not adequately developed that argument on appeal. Alternatively, the board argues that it properly concluded that complainant failed to establish that the inspection was improper, because the facts, as found by the board, are supported by substantial evidence and demonstrate that respondent properly performed the services that the seller hired him to perform.

Even assuming that complainant adequately developed his argument regarding the "improper work" claim, we conclude that the board did not err in dismissing the complaint on that basis, because the facts found by the board establish that respondent properly performed the services that seller hired him to perform and those findings are supported by substantial evidence.

To determine what constitutes a claim for "improper work," we must determine the meaning of that term as used in ORS 701.140. When construing a statute, our "paramount goal" is to discern the legislature's intent, by looking first to the text and context of the statute. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). When we consider the text of a statute we give words of common usage their plain

and ordinary meaning while also giving effect to the "well-defined legal meanings" of legal terms. *State v. Contreras*, 253 Or App 693, 695, 291 P3d 799 (2012) (citing *Fresk v. Kraemer*, 337 Or 513, 520, 99 P3d 282 (2004)).

ORS 701.140 provides that complaints must "arise from the performance * * * of work that requires a contractor license." The nature of the complaint allowed by ORS 701.140(1)(b) arising from the performance of "work" is described by the adjective "improper." Nowhere in ORS chapter 701, nor in any other applicable statute, is the phrase "improper work" defined.

The adjective "improper," as relevant here, is defined as "not suited to the circumstances, design, or end." *Webster's Third New Int'l Dictionary* 1137 (unabridged ed 2002). Thus, a claim that work was improper for purposes of ORS 701.140(1)(b) may be characterized as a claim that the work was not suited to the circumstances under which the work was performed.

Here, the board adopted the ALJ's factual findings and added several findings to the final order. The board found that seller contacted respondent, but did not show Lundstrom the inspection report. The board also found that, after seller directed Lundstrom to the interior of the house and asked him to look at the windows, Lundstrom agreed to inspect them because he believed that seller was concerned that water from respondent's pressure washing had caused the leak. The board found that seller did not ask Lundstrom about the source of any water intrusion, only interior damage. The board also found that seller had not explained to Lundstrom that he had concerns regarding persistent water intrusion, and that seller had not asked Lundstrom to look at the exterior of the windows. Additionally, the board found that seller asked Lundstrom to provide his opinion of damage to the windows, and Lundstrom determined that the wood showed no damage. After a review of the record, we conclude that those findings are supported by substantial evidence.

Based on those findings, the board concluded that "[t]he evidence in the record does not support a conclusion that [r]espondent * * * improperly performed the work *that*

*he contracted to perform.*" (Emphasis added.) Further, the board focused on what seller had asked Lundstrom to do, stating:

> "[Seller] hired [r]espondent to clean moss from the house's roof and clean the gutters, and that is the only work for which [r]espondent ever received payment. When Lundstr[o]m came * * * to check on his workers' performance of that job, [seller] asked Lundstr[o]m to look at the windows at issue. * * * [Seller] voiced his opinion about the nature of any possible water intrusion, and asked Lundstr[o]m if his inspection supported that opinion.

> "* * * * *

> "[A]s explained in detail above, *to the extent that [r]espondent contracted to inspect the windows, he entered into the terms of that contract with the home seller * * * and performed the tasks that [seller] asked him to do.*"

(Emphasis added.) Thus, based on the evidence in the record that speaks to the conditions under which the work was performed and the information presented to Lundstrom by seller, the board concluded that the inspection that Lundstrom performed was suitable to the circumstances and, accordingly, was not improper. That conclusion is logically supported by the factual findings and is thus supported by substantial reason.

We turn to complainant's contention that the board erred in concluding that respondent did not perform "negligent work." He argues that he established the existence of a common-law special relationship with respondent and that, in any event, a "negligent work" claim under ORS 701.140(1) is independent of a claim for negligence under common law. The board responds that ORS 701.140 does not create an independent cause of action and instead grants the board jurisdiction over claims for common-law negligence as long as certain conditions are met.

As noted, under ORS 701.140, a complaint may be brought to the board if a complainant alleges "negligent work." "Negligent work" is not defined in ORS chapter 701 or in any other pertinent statute. However, negligence is a term of art and, thus, to inform our consideration of the parties' arguments, we look to case law to give that term its

"well-defined legal meaning." *Contreras*, 253 Or App at 695. Generally speaking, to recover in negligence, a complainant must prove that the respondent's conduct created a foreseeable risk of harm and caused injury to the complainant. *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987). However, under the common-law "economic loss" doctrine, economic damages—such as those suffered by complainant here—"are recoverable in negligence *only if the defendant is subject to a heightened standard of care*, such as one arising out of a special relationship" or statute. *Abraham*, 350 at 40 (emphasis added). Therefore, if common-law principles of negligence apply here, complainant must demonstrate "the existence of a special relationship in which the [respondent] had some obligation to pursue the [complainant]'s economic interests." *Roberts v. Fearey*, 162 Or App 546, 550, 986 P2d 690 (1999) (emphasis omitted).

In *Bell v. PERB*, 239 Or App 239, 249-50, 247 P3d 319 (2010), *rev den*, 350 Or 230 (2011), we held that,

> "[A] special relationship is defined by these traits: (1) One party relinquishes control over matters, usually financial, and entrusts them to the other party[;] (2) The party with control is authorized to exercise independent judgment; (3) in order to further the other party's interests; and (4) The relationship either is, or resembles, other relationships in which the law imposes a duty on parties to conduct themselves reasonably, so as to protect the other parties to the relationship * * *. In such relationships, the party in control has a heightened duty to the other party, and the other party has a right to rely on the controlling party's non-negligent performance of that duty."

(Internal quotation marks and citations omitted.)

Whether a special relationship exists depends on the "roles that the parties assume *in the particular interaction* where the alleged tort occur[s]." *Id.* at 251 (emphasis and brackets in *Bell*) (citing *Strader v. Grange Mutual Ins. Co.*, 179 Or App 329, 334, 39 P3d 903, *rev den*, 334 Or 190 (2002)).

As noted, complainant argues that a claim for "negligent work" under ORS 701.140 is independent of a claim for negligence under common law. However, complainant cites

no authority for the proposition that a claim for negligent work is somehow different from a claim for common-law negligence. We have reviewed the text, context, and legislative history of ORS 701.140, and we conclude that "negligent work" as set forth in that statute refers to common-law negligence and does not create an independent cause of action. That is the only plausible interpretation that we can draw. *See Gaines*, 346 Or at 169 (if statutory meaning is clear from examination of text, context, and legislative history, further inquiry is unnecessary). Therefore, we conclude that the board did not err when it applied principles of common-law negligence, including the economic loss doctrine, in the final order.

In applying the principles of common-law negligence and the economic loss doctrine, the board determined that no special relationship existed between complainant and respondent. Having determined that the board's factual findings underlying that conclusion are supported by substantial evidence, we review those facts and the board's analysis leading to its legal conclusion for substantial reason. *Goin*, 203 Or App at 763.

As discussed above, the board found that seller hired respondent and did not show Lundstrom the inspection report or the Buyer's Repair Addendum. The board also found that seller requested that Lundstrom view and inspect the interior of the windows for damage and provide his opinion of the damage to the windows. The board found that Lundstrom had agreed to inspect the interior of the windows because he believed that respondent's pressure washing had caused the leak and that seller had not explained that he had concerns about persistent water intrusion. The board also found that seller had not asked Lundstrom to look at the exterior of the window or to determine the source of any water leaks and that Lundstrom had determined that the wood showed no damage.

Based on those findings, the board concluded that complainant did not prove, by a preponderance of the evidence, that a special relationship existed. The board concluded that—because seller had hired and contracted with respondent, and complainant had neither hired nor consulted

with respondent—there was no direct relationship between complainant and respondent, *i.e.*, no "special relationship" existed between complainant and respondent. That conclusion logically flows from the board's factual findings—*i.e.*, that Lundstrom never saw the inspection report, and that seller did not ask Lundstrom to determine the source of any water leaks—and therefore is supported by substantial reason.

Complainant nonetheless argues that the board was required to allow his negligence claim as a matter of law for the reasons expressed in *Meininger v. Henris Roofing & Supply*, 137 Or App 451, 905 P2d 861 (1995). In *Meininger*, the plaintiffs purchased a home after the defendant, a roofing company hired by the seller's real estate agent, performed a roof inspection and provided a report to the plaintiffs which concluded that the roof would last eight to ten more years. 137 Or App at 453. The roof leaked the following winter, and the plaintiffs sued for negligent misrepresentation. The defendant argued that it had no duty to the plaintiffs, because the seller's real estate agent—not the plaintiffs' agent—had hired it to perform the inspection. *Id.* We disagreed, concluding that a special relationship existed because "[d]efendant was hired to provide a professional opinion about the condition of the roof, which it knew would be communicated to and relied upon by plaintiffs." *Id.* at 455. We held that "not all types of relationships give rise to a duty of care to protect against purely economic loss" and noted that "[t]he common thread * * * is that the professional is acting, at least in part, to further the economic interests of the person to whom the duty is owed." *Meininger*, 137 Or App at 454.

The crux of *Meininger* is not, as complainant suggests, to announce that a special relationship is created in all cases in which a contractor performs an inspection and creates an inspection report. To the contrary, as we did in *Meininger*, a decisionmaker must examine the nature of the parties' relationship on a case-by-case basis to determine whether a special relationship exists. *See Shin v. Sunriver Preparatory School, Inc.*, 199 Or App 352, 366, 111 P3d 762 (2005) (stating that whether a special relationship exists is driven by the facts of the case); *Strader*, 179 Or App at 334

(explaining that a court uses a "functional as opposed to a formal analysis" to determine a special relationship exists based on the roles the parties assume in the transaction).

Complainant next asserts that, under *Meininger*, Lundstrom's knowledge is relevant to the determination of whether a special relationship exists, but argues that the board's finding that Lundstrom "was not aware of [c]omplainant's interest in Lundstr[o]m's opinion, and was not aware that [c]omplainant would be making any economic decisions based on Lundstr[o]m's opinion" is "misleading" and "immaterial" to the determination of whether a special relationship existed between complainant and respondent. The board responds that, although Lundstrom knew that the letter would be forwarded to a potential buyer, that knowledge does not, in itself, create a special relationship between complainant and respondent.

We conclude that the board's finding was not "misleading" because it was supported by substantial evidence, *i.e.*, that "[seller] did not show Lundstr[o]m the inspection report." No other factual findings in the final order tend to suggest that Lundstrom knew that complainant would rely on Lundstrom's opinion.

We next determine whether Lundstrom's knowledge that the letter would be forwarded to a potential buyer was sufficient to create a special relationship between complainant and respondent such that respondent would have "some obligation to pursue the [complainant]'s economic interests." *Roberts*, 162 Or App at 550.

We begin with whether Lundstrom's knowledge, at the time of the inspection and the creation of the April 25, 2007, letter, was sufficient to create a special relationship. As found by the board, Lundstrom was never informed by seller of the purpose of the inspection, nor was there ever any indication that the visual inspection that he performed was inadequate for seller's purposes. At the time of the inspection, Lundstrom dealt exclusively with seller, had no contact with complainant or complainant's realtor, had no written contract with seller for any work relating to the inspection, and received no payment for the inspection. Lundstrom verbally recommended that a specialty inspector examine

the windows and also recommended that seller buy a home warranty. Although seller's realtor was present during the inspection, there is no indication from the record that she had any involvement with the request for the inspection, the discussion between seller and Lundstrom, or seller's request for the letter.

When Lundstrom wrote the April 25, 2007, letter, he did so at seller's request and addressed the letter directly to seller. At that point, Lundstrom had no contact or involvement with complainant or complainant's realtor and had not been informed of seller's reasons for wanting the written opinion. There also was no indication that the letter was inadequate for seller's purposes; in the letter, Lundstrom presented no new information to seller. Instead, the letter reiterated the contents of Lundstrom and seller's previous discussion. Based on those facts, Lundstrom had insufficient knowledge that his opinion would be relied upon by anyone but seller, or of complainant's interest in the inspection, to create a relationship between respondent and complainant that would obligate respondent to pursue complainant's economic interests. *Roberts*, 162 Or App at 550. Thus, we conclude that Lundstrom's knowledge—as of the time of the inspection and the creation of the April 25, 2007, letter—did not create a special relationship with complainant.

We turn to the addition of the final paragraph of the April 25, 2007, letter, added at the request of complainant's realtor approximately one week after the inspection. Although Lundstrom did not know that anyone other than seller would rely on Lundstrom's opinion about the windows' condition at the time of the inspection and the creation of the letter, there is no question that, when he added the paragraph one week later, he knew that someone other than seller would rely on the letter. However, there is nothing in the record to indicate that the realtor's request provided Lundstrom with any new information about the purpose of the inspection or the letter that would give Lundstrom sufficient knowledge of complainant's interest in the inspection to create a special relationship between respondent and complainant. Thus, we agree with the board that such knowledge—that someone would rely on Lundstrom's opinion—does not demonstrate that Lundstrom had sufficient information to know

about—and thus be required to pursue—complainant's economic interests. Accordingly, Lundstrom's mere knowledge that complainant would rely on the letter cannot support a conclusion that a special relationship existed, and thus cannot support a negligence claim under the economic loss doctrine. Thus, although complainant may have relied on Lundstrom's opinion, our conclusion that no special relationship existed demonstrates that he lacked the *right* to do so. *See Conway v. Pacific University*, 324 Or 231, 242 n 5, 924 P2d 818 (1996) (distinguishing a plaintiff's actual reliance from a situation in which the plaintiff "ha[d] a *right* to rely upon" the defendant (emphasis in original)).

Further, as required by *Meininger*, the board made an examination of the record, and, as we have explained, its conclusion that there was no special relationship between complainant and respondent is supported by substantial reason given the record in this case. 137 Or App at 454.

Complainant also argues that ORS 701.140 and OAR 812-004-0320 create a special relationship, distinct from the common law, between himself and respondent sufficient to support his claim for negligent work. The board responds that ORS 701.140 and OAR 812-004-0320 do not create a special relationship and that OAR 812-004-0535(1) requires complainant to prove the underlying claim for common-law negligence, which would include proving facts that would avoid the economic loss doctrine. For the following reasons, we agree with the board.

As pertinent here, ORS 701.140 provides that complaints filed with the board must arise from the performance of negligent work. OAR 812-004-0320(5) (2007) states, in relevant part, that "[c]laims will be accepted only when one or more of the following relationships exist between the claimant and the respondent: * * * [a] real estate purchase conditioned upon *an inspection report* or repairs made by the respondent."[6] (Emphasis added.)

---

[6] OAR 812-004-0320(5)(d) has since been amended to remove the reference to inspection reports, so that complaints based on real estate purchases will only be accepted when the complaint is based on a "real estate purchase conditioned upon repairs made by the respondent." Because we conclude that the November 15, 2007, version of OAR 812-004-0320 applies here, that amendment is of no import. As noted, we cite the earlier version of the rule in this opinion.

ORS 701.140 and OAR 812-004-0320(5)(d) merely describe the board's jurisdiction to hear certain claims and do not alter the requirement that the complainant must also prove the underlying claim of negligence—*i.e.*, that the respondent's acts or omissions caused damages within the scope of ORS 701.140—as per OAR 812-004-0535(1). Accordingly, we reject complainant's argument that ORS 701.140 and OAR 812-004-0320(5)(d) create a special relationship sufficient to support complainant's negligence claim.

Finally, complainant asserts that the board erred in concluding that he failed to prove that Lundstrom's inspection was negligent. We have already concluded that the board did not err when it concluded that no special relationship existed between complainant and respondent and there was no heightened duty of care. Thus, complainant's negligence claim cannot be entertained. *Abraham*, 350 Or at 40; *see Roberts*, 162 Or App at 550 (stating that, only after a special relationship has been established, creating a heightened duty of care, "does *Fazzolari's* [common-law negligence] foreseeability analysis come into play").

Affirmed.