Argued and submitted January 6, 2015, affirmed May 25, 2016

INNOVATIVE DESIGN & CONSTRUCTION, LLC,
a limited liability company,
*Petitioner,*

*v.*

CONSTRUCTION CONTRACTORS BOARD,
*Respondent.*

Construction Contractors Board
75384; A151139

375 P3d 533

Owen W. Von Flue argued the cause and filed the briefs for petitioner.

Erin Galli, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Erin C. Lagesen, Assistant Attorney General.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

**SERCOMBE, P. J.**

Petitioner, Innovative Design & Construction, LLC (Innovative Design), seeks judicial review of a final order of the Construction Contractors Board (CCB) finding that Innovative Design had committed 12 violations of ORS 701.098(1)(L) and imposing a $1,000 penalty for each of those violations. On review, Innovative Design raises five assignments of error. We reject without discussion its third and fourth assignments of error, and write to address the first, second, and fifth assignments. In its first assignment, Innovative Design asserts that OAR 812-002-0260, the CCB's rule defining dishonest and fraudulent conduct as used in ORS 701.098(1)(L), should be invalidated because it "depart[s] from the legal standard intended by the legislature" in the statute. However, we conclude that Innovative Design failed to preserve that contention during the administrative process. In its second assignment, Innovative Design contends that, in its order, the CCB erroneously interpreted the term "injurious to the welfare of the public" as used in ORS 701.098(1)(L) and that the order is "ambiguous such that reasonable minds could differ as to how the term 'injurious to the public welfare' [h]as been defined and applied." As explained below, we conclude that those contentions, like those raised in the first assignment, were not preserved. Finally, in its fifth assignment of error, Innovative Design asserts that a number of factual findings contained in the board's order are not supported by substantial evidence. *See* ORS 183.482(8)(c) (on review in a contested case, the "court shall set aside or remand [an] order if the court finds that the order is not supported by substantial evidence in the record"); *see also Hettle v. Construction Contractors Board*, 260 Or App 135, 137, 316 P3d 344 (2013), *rev den*, 355 Or 380 (2014) (substantial reason review requires us to determine whether the CCB's findings of fact logically lead to its conclusions of law). As explained below, we conclude that most of the findings in question are supported by substantial evidence. Further, the findings that we conclude are not supported by substantial evidence were not material to the board's order and, therefore, did not affect the validity of the order and do not provide a basis for reversal. Accordingly, we affirm.

With certain exceptions discussed below, the parties do not challenge the CCB's findings of historical fact.[1] Our description of the facts is drawn from those findings.

Innovative Design is licensed by the CCB as a general contractor; its managing member is Gene Pfeifer. The violations found by the CCB in this case are related to three different residential remodeling projects: the Gatti project, the Rawson project, and the LaGrone project.

In 2006, Innovative Design entered into written cost plus contracts for the Gatti project.[2] For the project, the total cost plus contract price was $431,561. In 2006 and 2007, Gatti paid Innovative Design $668,898 for the project. Because he also paid some of the subcontractors directly, in total, Gatti paid at least $700,000 for the project. Innovative Design hired a number of subcontractors to work on the project. Among those subcontractors were Pioneer Roofers, Terry's Electric, and Aloha Ceilings. Although each of those companies completed the job for which it had been hired, Innovative Design failed to pay the full amount to which it had agreed. At the time of the administrative hearing, Innovative Design still owed money to each of those subcontractors. In 2008, Innovative Design "admitted that $17,894 was due and owing to various subcontractors that had worked on the Gatti project."

In 2007, Innovative Design entered into a written fixed price contract for $149,829 for the Rawson project. In May 2008, the Rawsons filed a CCB complaint against Innovative Design. According to the CCB findings, Innovative Design's progress billings to the Rawsons "are marked 'PAID' and the credit memo dated May 2, 2008 reflects a zero balance. [Innovative Design] did not sue Rawson for any amount due on the contract." (Internal citations omitted.) Innovative Design hired subcontractors, including Sandy Electric, Perfection Hardwood Floors, and

---

[1] The board adopted and incorporated into its order the proposed order issued by the administrative law judge.

[2] The Gatti project consisted of two contracts, one to remove and replace the siding and roof on the Gatti house and the other to remodel the house. The estimated cost listed in the contract for the siding and roof was $252,039. The estimated cost for the home remodel was $179,522.

Taylor & Son Drywall, to work on the project, a remodel of the Rawson home. Each of those three subcontractors completed the work it had been hired to perform on the remodel. However, Innovative Design failed to pay the subcontractors in full and, at the time of the administrative hearing, owed money to each of those subcontractors; it "admitted [in 2008] that $19,238 was due and owing to various subcontractors which had worked on the Rawson project."

Finally, in 2008, Innovative Design entered into a written cost plus contract for approximately $58,405 to remodel the LaGrone home. At some point, a dispute arose between the LaGrones and Innovative Design regarding the amount owed for the project. Eventually, in July 2008, they entered into a settlement pursuant to which Innovative Design "agreed to accept $80,808 ($62,655 + $18,153) as payment in full." The LaGrones paid Innovative Design that amount on the date of the settlement. For the LaGrone project, Innovative Design had hired subcontractors, including CL Woodworks, Inc., Ultimate Painting LLC, Five J's Tile Co., EZ Flow Plumbing LLC, Anishchenkos FC Inc., and Keystone Granite, to perform work. Although each of those subcontractors completed the work for which it had been hired, Innovative Design failed to pay the full amount owing on the subcontracts. It owed money to several of those subcontractors at the time of the administrative hearing and, in 2008, it "admitted that $13,947 was due and owing to various subcontractors which had worked on the LaGrone project." Furthermore, the LaGrones themselves paid "Five J's in full, over and above the settlement amount [they] had already paid [Innovative Design]."

The CCB began an investigation of Innovative Design and Pfeifer and, as a result of Innovative Design's failure to pay its subcontractors on the Gatti, Rawson, and LaGrone projects, in 2010, the CCB served Innovative Design with a notice of proposed disciplinary action. The notice stated that the CCB intended to assess a $12,000 penalty against Innovative Design, $1,000 for each of 12 violations of ORS 701.098(1) and OAR 812-002-0260. The statute provides that the CCB may, among other things, assess a civil penalty if it "determines after notice and opportunity

for hearing" that a "licensee or applicant has engaged in conduct as a contractor that is dishonest or fraudulent and that the board finds injurious to the welfare of the public." ORS 701.098(1)(L). The CCB, in turn, has promulgated OAR 812-002-0260, which provides, in part,

"'Dishonest and fraudulent conduct,' as used in ORS 701.098(1)(L) and (4)(a)(D) includes, but is not limited to, the following:

"(1)  Acting in a manner that, because of a wrongful or fraudulent act by the applicant or licensee, has resulted in injury or damage to another person; or

"(2)  Failing to pay monies when due for materials or services rendered in connection with the applicant's or licensee's operations as a contractor when the applicant or licensee has received sufficient funds as payment for the particular construction work project or operation for which the services or materials were rendered or purchased * * *."

Innovative Design requested a hearing, disputing that it had violated the statute and the rule. At the contested case hearing, which was held before an administrative law judge (ALJ) assigned by the Office of Administrative Hearings, Pfeifer appeared on behalf of Innovative Design. The ALJ received evidence from both sides and, after the hearing, issued a proposed order, which the CCB later adopted and incorporated into its final order. The CCB concluded that Innovative Design's failure to meet its financial obligations in this case was dishonest, fraudulent, and injurious to the public, in violation of ORS 701.098(1) and OAR 812-002-0260. It further concluded that the proposed discipline of $1,000 for each violation was warranted, and, accordingly, it ordered Innovative Design to pay a penalty of $12,000.

As noted, on review, Innovative Design first contends that the CCB overreached its authority when it promulgated OAR 812-002-0260. It asserts that the rule's definition of "dishonest and fraudulent conduct" (as including failing to pay subcontractors when the contractor "has received sufficient funds as payment for the particular construction work project or operation" for which the subcontractor was hired) is inconsistent with the legislative intent expressed in ORS

701.098(1) and, therefore, the rule is invalid. Specifically, Innovative Design "requests that * * * OAR 812-002-0260(1) and (2) be invalidated." The CCB responds, in part, that Innovative Design failed to preserve the assertions raised in its first assignment during the administrative process. Specifically, the CCB says Innovative Design did not assert, as it does now, that "the CCB lacked statutory authority to define the conduct of failing to pay subcontractors, when the contractor has received sufficient funds to do so, as fraudulent or dishonest" and that OAR 812-002-0260(1) and (2) should, therefore, be invalidated. We agree with the CCB that Innovative Design failed to preserve this assignment of error.

Pursuant to ORAP 5.45(1), "[n]o matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court." "Preservation requirements 'apply with as much force in the administrative area.'" *Entrepreneurs Foundation v. Employment Dept.*, 267 Or App 425, 428, 340 P3d 768 (2014) (quoting *Veselik v. SAIF*, 177 Or App 280, 288, 33 P3d 1007 (2001)); *see Oregon Occupational Safety v. Bellet Construction*, 129 Or App 547, 550, 879 P2d 1333 (1994) (declining to address challenge to administrative rule where party failed to preserve challenge to rule at administrative hearing); *see also Llewellyn v. Board of Chiropractic Examiners*, 318 Or 120, 127, 863 P2d 469 (1993) (declining to address constitutional challenge to statute where party failed to make argument at administrative hearing and, therefore, failed to preserve it). In order to preserve an argument for judicial review, the party advancing the argument must have made it before the agency with enough specificity to ensure that the agency was able to fully consider the point. *See Becklin v. Board of Examiners for Engineering*, 195 Or App 186, 199-200, 97 P3d 1216 (2004), *rev den*, 338 Or 16 (2005). That requirement advances the underlying purposes of the preservation rule, including assisting in the development of a full record, promoting efficiency, and ensuring that parties are not surprised, misled, or denied an opportunity to meet an argument. *See Entrepreneurs Foundation*, 267 Or App at 429.

Here, during the administrative process, Innovative Design did not make the argument that it now seeks to

assert on review: that OAR 812-002-0260's definition of the phrase "dishonest and fraudulent conduct" is inconsistent with ORS 701.098(1) and, therefore, the rule is invalid. Before the agency, Innovative Design argued that it was honest and was not purposefully avoiding financial obligations, but simply had cash flow problems. Pfeifer, the company's principal, asserted that he was an honest and upright individual who was attempting to pay off his debts. He also presented witnesses who attested to his good moral character. The arguments raised before the agency, however, did not raise a question regarding the validity of ORS 812-002-0260 such that the agency would have understood that it needed to consider the point Innovative Design now asks us to address on review. Accordingly, we do not further consider Innovative Design's first assignment of error.

In its second assignment of error, Innovative Design asserts that, in its order, the CCB erroneously interpreted the term "injurious to the welfare of the public." It also contends that the order is "ambiguous such that reasonable minds could differ as to how the term 'injurious to the public welfare' [h]as been defined and applied." The CCB again responds, in part, that Innovative Design failed to preserve its arguments. In response, Innovative Design asserts that it preserved arguments about the proper interpretation of the phrase "injurious to the welfare of the public" by arguing, generally, in the administrative process that it had not been dishonest or fraudulent. We agree with the CCB that Innovative Design's contention is not preserved.

As noted, for the CCB to assess a civil penalty under ORS 701.098(1)(L), it must determine, after notice and opportunity for a hearing, that the "licensee or applicant has engaged in conduct as a contractor that is dishonest or fraudulent *and* that the board finds injurious to the welfare of the public." (Emphasis added.) In other words, the pertinent statutory subsection requires the CCB to determine both that the conduct in question is (1) dishonest or fraudulent and (2) injurious to the welfare of the public. Before the ALJ, Innovative Design argued that a fine should not be imposed because it had not engaged in conduct that was dishonest or fraudulent. It did not, however, assert that, in any

event, the CCB could not find that its conduct was injurious to the welfare of the public.

Furthermore, in the proposed order, having determined that Innovative Design had received adequate funds but had nonetheless failed to pay its subcontractors and, therefore, it had engaged in dishonest and fraudulent behavior, the ALJ determined that, even if Innovative Design's failure to pay its subcontractors was "caused by cash flow problems," it was nevertheless "injurious to the public." The proposed order explained:

> "[Innovative Design]'s business practices pose a risk to any potential clients that their payments will be diverted from their own construction projects to pay [Innovative Design]'s outstanding debts from previous projects, resulting in property liens and double payment. Additionally, [Innovative Design]'s business practices pose a risk to any subcontractor that it will not be paid for its work on a future project. For these reasons, [Innovative Design]'s business practices are injurious to the welfare of the public, and therefore, discipline is warranted under ORS 701.098(1) * * *."

In its exceptions to the proposed order, Innovative Design asserted that the order incorrectly concluded that it had "engaged in conduct that was dishonest or fraudulent." It did not, however, assert that the interpretation of the term "injurious to the welfare of the public" was incorrect, nor did it contest the conclusion that Innovative Design's conduct met that requirement. Thus, although it had an opportunity to raise asserted errors regarding the CCB's interpretation and explanation of the statute, it failed to do so. Innovative Design's arguments before the ALJ and in its exceptions to the proposed order did not allow the CCB to consider the contentions that Innovative Design now raises in its second assignment of error. Accordingly, we agree with the CCB that Innovative Design failed to preserve its second assignment, that, in its order, the CCB erroneously interpreted the term "injurious to the welfare of the public" and that its order does not make clear how that term has been "defined and applied." Accordingly, we do not further address that assignment.

In its fifth assignment of error, Innovative Design asserts that the CCB's final order contains several factual

findings that are not supported by substantial evidence: (1) Innovative Design was paid in full on the Gatti project; (2) two subcontractors filed liens on the Gatti property; (3) Innovative Design was paid in full on the Rawson project; (4) three subcontractors filed liens on the Rawson property; (5) Innovative Design was paid in full on the LaGrone project;[3] and (6) three subcontractors filed liens on the LaGrone property. According to Innovative Design, those findings are not supported by substantial evidence.

In reviewing a factual finding for substantial evidence, we must determine whether the record, viewed as a whole, would permit a reasonable person to make the factual finding in question. *See* ORS 183.482(8)(c); *Hettle*, 260 Or App at 137. "Our standard of review requires that we defer to the agency's judgment as to what inferences should be drawn from the evidence." *Bandon Pacific v. Environmental Quality Commission*, 273 Or App 355, 362, 359 P3d 394 (2015) (internal quotation marks omitted).

Applying that standard, we conclude that a number of the factual findings challenged by Innovative Design are, indeed, supported by substantial evidence. Specifically, we conclude that the whole record, including the inferences the CCB was entitled to draw from the evidence, would permit a reasonable person to make the following factual findings: (1) Innovative Design was paid in full on the Gatti project; (2) two subcontractors filed liens on the Gatti property;[4] (3) Innovative Design was paid in full on the Rawson project;

---

[3] Innovative Design purports to challenge the CCB's factual finding that "LaGrone Paid [Innovative Design] the Full Contract Price (Finding 27)." (Boldface omitted.) However, paragraph 27 of the factual findings does not include a finding that the LaGrones paid Innovative Design the full contract price. Instead, it states that a dispute arose concerning the amount owed on the LaGrone project and that Innovative Design and the LaGrones entered into a settlement agreement "whereby [Innovative Design] agreed to accept $80,808 * * * as payment in full. On July 28, 2008, LaGrone paid [Innovative Design] in full. [Innovative Design] did not sue LaGrone for any amount due on the contract." (Citations omitted.)

[4] Indeed, we note that, in its exceptions to the proposed order, in response to the proposed factual finding that two subcontractors had filed liens on the Gatti property, Innovative Design agreed that, "[y]es, there were two [subcontractors] who filed liens [on the Gatti property]." It proceeded to provide an explanation, however, about how it addressed those liens.

and (4) Innovative Design was paid in full on the LaGrone project.[5]

We agree, however, that substantial evidence does not support the findings that three subcontractors filed liens on the Rawson project and three subcontractors filed liens on the LaGrone project. Instead, as to the Rawson project, as the CCB concedes, the evidence demonstrates that only one subcontractor filed a lien on the Rawson property.[6] Furthermore, as to the LaGrone property, the evidence permits a finding that LaGrone received lien releases from three subcontractors who had "filed valid rights to lien." That does not, however, support a finding that an actual claim of construction lien was filed against the property. *See* ORS 87.021 (requiring that "a person furnishing any material, equipment, services or labor described in ORS 87.010(1) to (3), (5) and (6) for which a lien may be perfected under ORS 87.035" give "a notice of right to lien to the owner of the site"); ORS 87.035 (requiring that a lien under ORS 87.010 be "perfected by filing a claim of lien" containing specified information and verified by oath). Thus, on the three projects—Gatti, Rawson, and LaGrone—substantial evidence supports a conclusion that a total of three, rather than eight, subcontractors filed liens.

However, under ORS 183.482(8)(c), a "reviewing court shall set aside or remand [an agency] order 'if the court finds that *the order* is not supported by substantial evidence in the record.'" *Steele v. Water Resources Commission,* 248 Or App 229, 240-41, 273 P3d 243 (2012) (quoting ORS 183.482(8)(c) (emphasis in *Steele*)). "It is the order that must be supported by substantial evidence. We may not set aside or remand a final order, even if some findings are not supported by substantial evidence, unless the erroneous findings somehow affect the validity of the order." *Id.* at 241.

---

[5] We note that we reject Innovative Design's contention that, because it entered into a settlement on the LaGrone project and was paid on that settlement, it could not have been paid in full. To the extent Innovative Design agreed to accept a certain dollar amount as payment and was paid that amount, the CCB could conclude that Innovative Design was, in fact, paid in full.

[6] Innovative Design concedes that the exhibit that contains a copy of that claim of construction lien "does prove a subcontractor's construction lien was filed against Rawson's property."

As the CCB points out, the "ultimate conclusions in the order on review do not turn on the *number* of contractors who filed liens" against properties. (Emphasis added.) We agree. The conclusion in the final order that Innovative Design engaged in dishonest and fraudulent conduct was based on the determination that Innovative Design received "adequate funds to pay all subcontractors on each of the three projects" but, nonetheless, failed to pay subcontractors for work performed on the construction projects "as long as four years" before the CCB's order. Furthermore, the CCB's conclusion that Innovative Design's business practices "pose a risk to any potential clients that their payments will be diverted from their own construction projects to pay [Innovative Design's] outstanding debts from previous projects, resulting in property liens and double payment" is not dependent on the number of liens that subcontractors filed on the three projects at issue. Instead, the fact that *any* subcontractors filed liens supports the conclusion that Innovative Design's practices pose a risk to future clients. In sum, we conclude that, although two of the factual findings are not supported by substantial evidence, that does not leave the order, as a whole, unsupported by substantial evidence and reason. *See Hettle*, 260 Or App at 137. Rather, because the erroneous findings were not material and, therefore, did not affect the validity of the order, they do not provide a basis for remand. *See Steele*, 248 Or App at 241. Accordingly, we reject Innovative Design's fifth assignment of error.

Affirmed.