Argued and submitted July 3, 2018; general judgment reversed and remanded,
supplemental judgment reversed November 27, 2019

Mark LANSING,
dba Mal Joco, LLC,
*Plaintiff-Appellant,*

*v.*

JOHN DOES 1-5,
*Defendants,*
*and*

CR SERVICES, INC.
and CR Services, LLC,
*Defendants-Respondents.*

Josephine County Circuit Court
14CV1395; A164239

455 P3d 541

Plaintiff, the owner of a house, filed a negligence claim against defendant, a contractor, related to work done at the house before plaintiff purchased the house. Plaintiff alleged that defendant was negligent in replacing certain drywall without first ascertaining and repairing the source of the water leak that had damaged the drywall in the first place. Applying the "economic loss doctrine," the trial court dismissed plaintiff's negligence claim for failure to state a claim under ORCP 21 A(8). The court entered a general judgment, based on that ruling, as well as a supplemental judgment awarding attorney fees to defendant. Plaintiff appeals both judgments. *Held*: The trial court erred in dismissing plaintiff's claim based on the economic loss doctrine. Accepting as true all well-pleaded factual allegations in the complaint and favorable inferences therefrom, plaintiff alleged property damage, which took the claim outside the application of the economic loss doctrine. The judgment is therefore reversed, and, because the supplemental judgment relates to the general judgment, it too is reversed.

General judgment reversed and remanded; supplemental judgment reversed.

Frances Elaine Burge, Judge.

Mark Lansing argued the cause and filed the briefs for appellant.

Clark E. Rasche argued the cause for respondents. Also on the briefs was Watkinson Laird Rubenstein, P.C.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Aoyagi, Judge.*

_____

* Egan, C. J., *vice* Hadlock, J. pro tempore.

AOYAGI, J.

General judgment reversed and remanded; supplemental judgment reversed.

**AOYAGI, J.**

Plaintiff, the owner of a house, filed a negligence claim against defendant, a contractor,[1] based on defendant's alleged negligence in replacing drywall in the house without first ascertaining and repairing the source of the water leak that had damaged the drywall in the first place. The work was done before plaintiff purchased the house. Applying the "economic loss doctrine," the trial court dismissed plaintiff's claim for failure to state a claim. The court entered a general judgment, based on that ruling, as well as a supplemental judgment awarding attorney fees to defendant. Plaintiff appeals both judgments. Because we agree with plaintiff that the trial court erred in dismissing his claim on the basis that it did, we reverse and remand the general judgment, and we reverse the supplemental judgment.

On review of the grant of a motion to dismiss under ORCP 21 A(8), "[w]e accept as true all well-pleaded factual allegations and give plaintiff[] the benefit of all favorable inferences that may be drawn from the facts alleged." *Yanney v. Koehler*, 147 Or App 269, 272, 272 n 1, 935 P2d 1235, *rev den*, 325 Or 368 (1997). We discuss only the operative complaint, which is the second amended complaint. *See Kastle v. Salem Hospital*, 284 Or App 342, 344, 392 P3d 374 (2017) (on review of an order granting a motion to dismiss, "our review is limited to the face of the operative complaint").

In the summer of 2013, a credit union hired defendant to do some work on a foreclosed house owned by the credit union. The exact scope of defendant's work is not alleged, but, at a minimum, defendant repaired and replaced certain drywall in the house.[2] Some of the drywall that defendant repaired or replaced was water damaged.

Around October 2013, the credit union sold the house to plaintiff. Plaintiff inspected the house before buying

---

[1] We refer to defendants-respondents collectively as "defendant." According to the complaint, one did actual work at the house, and the other is a related company.

[2] Plaintiff argues that it is reasonable to infer from the allegations in the complaint that he is alleging that defendant was hired as a general contractor, rather than a drywall contractor. We disagree—the complaint is simply silent as to defendant's scope of work.

it. The inspection revealed the new drywall. It was plaintiff's understanding that any leaks would have been fixed before new drywall was installed.

Plaintiff moved into the house around May 2014. At that time, he discovered water damage to the new drywall and ceiling. Plaintiff filed a negligence claim against defendant. He alleged that defendant was negligent in "failing to ascertain the source of the original water damage and repair it, prior to replacing the drywall and ceiling." He alleged that defendant knew or should have known that the water damage was "caused by something, most likely a water leak," which "needed to be fixed before the drywall and ceiling were replaced (otherwise they would suffer similar water damage during the next rainy season)." And he alleged that defendant's negligence had damaged him "to the extent of the cost of drywall replacement and water-leak repair," *i.e.*, $2,806.

At a pretrial hearing, the trial court dismissed plaintiff's negligence claim for failure to state a claim, pursuant to ORCP 21 A(8). Relying on the economic loss doctrine, the court concluded that, to state a negligence claim for "purely economic losses," plaintiff needed to allege a special relationship between the parties. The court offered plaintiff an opportunity to amend his complaint for that purpose, but plaintiff acknowledged that he could not allege a special relationship, at which point the court dismissed the negligence claim. That is, the court concluded that, given the economic loss doctrine, plaintiff could not prevail on his only claim, as pleaded. Based on that ruling, the court entered a general judgment and, later, a supplemental judgment awarding attorney fees to defendant. Plaintiff appeals both judgments.

On appeal of the general judgment, plaintiff assigns error to the trial court's dismissal of his negligence claim for failure to state a claim. We address that issue first.

The economic loss doctrine is a common-law doctrine that "bars a party that has suffered a purely economic loss from bringing a negligence action against the party that caused the loss, unless there is a special relationship between the parties." *Harris v. Suniga*, 344 Or 301, 305, 180

P3d 12 (2008); *see also Hettle v. Construction Contractors Board*, 260 Or App 135, 147, 316 P3d 344 (2013) ("[U]nder the common-law 'economic loss' doctrine, economic damages \*\*\* are recoverable in negligence only if the defendant is subject to a heightened standard of care, such as one arising out of a special relationship." (Emphasis omitted.)). Under the doctrine, "one ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property; rather, some source of duty outside the common law of negligence is required." *FountainCourt Homeowners v. FountainCourt Develop.*, 264 Or App 468, 484 n 11, 334 P3d 973 (2014) (internal quotation marks and alteration omitted).

The issue here is whether the trial court was wrong in viewing plaintiff's claim as alleging "a purely economic loss." *Harris*, 344 Or at 305. It is undisputed that plaintiff has not alleged the existence of a special relationship, so plaintiff effectively concedes that, if the economic loss doctrine applies, the trial court did not err in dismissing his claim. But plaintiff argues that the doctrine does *not* apply, because he has alleged *property damage* as a result of defendant's negligence, specifically water damage to the new drywall on the walls and ceiling of his house, which is not a purely economic loss. In response, defendant argues that the court properly dismissed plaintiff's claim because plaintiff has not alleged that the work defendant did—the repair and replacement of drywall—was performed negligently. In defendant's view, "[p]laintiff seeks to hold [d]efendant liable not for work negligently performed, but for a failure to exercise judgment in such a manner that allegedly would have prevented [p]laintiff" from having to replace the drywall and repair the leak.

Accepting as true all well-pleaded factual allegations and favorable inferences therefrom, *Yanney*, 147 Or App at 272, we conclude that the trial court erred in dismissing the complaint based on the economic loss doctrine. For purposes of the economic loss doctrine, "economic losses" means "financial losses," as distinguished from "damages for injury to person or property." *Harris*, 344 Or at 306 (citation omitted). Some examples of purely economic losses include a reduced stock price, a monetary gift to a beneficiary, a debt

incurred, and return of monies paid. *Id.* at 310. By contrast, when negligence results in personal injury or property damage, the loss is not "purely economic"—and the economic loss doctrine does not apply—even though the plaintiff may seek compensation for resulting economic losses, such as medical expenses or repair costs. *See id.* ("Every physical injury to property can be characterized as a species of 'economic loss' for the property owner, because every injury diminishes the financial value of the property owner's assets," but "the law ordinarily allows the owner of [a] damaged car or residence to recover in negligence from the person who caused the damage.").

When a plaintiff alleges that a contractor's negligence resulted in physical damage to building components, including water damage, the plaintiff is alleging property damage, not a purely economic loss. *Harris* is particularly on point. In that case, the plaintiffs owned an apartment building that had been built by the defendants. *Id.* The plaintiffs alleged that the defendants' negligence had caused construction defects, which, in turn, resulted in water damage that required repairs. *Id.* at 310-11. Given those allegations, the Supreme Court held that the trial court had erred in dismissing plaintiffs' negligence claim based on the economic loss doctrine, because the plaintiffs were alleging property damage. *Id.* at 310. Similarly, albeit in a different context, in *FountainCourt Homeowners*, we referenced the economic loss doctrine in concluding that, where the plaintiff alleged that the defendant's negligence had caused water intrusion into a building, resulting in physical damage to building components, the plaintiff was seeking and received damages for "physical property damage." 264 Or App at 484 (emphasis omitted).

Defendant seeks to distinguish *Harris*. It points out that the plaintiffs in *Harris* specifically alleged that the defendants' work was performed in a negligent manner. *See Harris*, 344 Or at 310 ("[P]laintiffs seek recovery because defendants' negligence caused dry rot in the apartment building that plaintiffs own."). By contrast, defendant argues, plaintiff has not alleged in this case that there was anything negligent about the manner in which defendant installed the drywall. We reject defendant's narrow

reading of the complaint. As previously noted, in determining whether a complaint states a claim for purposes of ORCP 21 A(8), the court must accept as true all well-pleaded factual allegations and favorable inferences therefrom. Applying that standard here, we understand plaintiff's complaint to allege that defendant's failure to identify the source of the water leak and repair it before replacing the drywall was negligent and resulted in property damage. As in *Harris*, such allegations are sufficient to state a claim that is not subject to dismissal based on the economic loss doctrine.

Defendant argues that *Hettle*, which the trial court cited, counsels a different result, but we disagree. In *Hettle*, the seller of a house hired a contractor to clean the roof and gutters. 260 Or App at 138. When the contractor's corporate president stopped by to check the work, the complainant, who was negotiating to buy the house, asked him to examine two windows for water damage. *Id*. The president did so and opined that there was no water damage. *Id*. at 140. The complainant bought the house and, when he moved in, discovered water damage in certain windows. *Id*. at 139. He filed an administrative complaint, alleging improper and negligent work, which the Construction Contractors Board dismissed for failure to state a claim. *Id*. We affirmed, in part based on the economic loss doctrine and the lack of a special relationship. *Id*. at 153. However, we expressly noted that neither party was contending that the damages were not economic, and, "[b]ecause the parties do not raise this issue, we do not address it." *Id*. at 143 n 5. As such, *Hettle* has no precedential value as to what constitutes economic losses, as distinct from property damage or a personal injury, for purposes of the economic loss doctrine.[3]

---

[3] In *Hettle*, 260 Or App at 137-38, 140, 145, the complainant's alleged damages appear to have related to existing water damage that the contractor failed to identify, not later water damage from the ongoing water intrusion, which may explain why no one contested that the complainant was alleging purely economic losses. Defendant also cites *Meininger v. Henris Roofing & Supply*, 137 Or App 451, 905 P2d 861 (1995), *rev den*, 322 Or 489 (1996). In that case as well, no one contested on appeal that the damages caused by a roofing company's alleged negligence in failing to identify an existing leak were purely economic losses. *Id*. at 453, 455.

On remand, plaintiff may or may not be able to prove that defendant's duty of care included an obligation to "ascertain the source of the original water damage and repair it, prior to replacing the drywall and ceiling." But whether plaintiff can prove that defendant was negligent is a different question from whether plaintiff has alleged that defendant was negligent and that such negligence caused property damage. Because plaintiff has done the latter, the trial court erred in relying on the economic loss doctrine to dismiss his negligence claim for failure to state a claim. Accordingly, we reverse and remand the general judgment.

Plaintiff also appeals the supplemental judgment, asserting that the trial court erred in awarding attorney fees to defendant. "When an appeal is taken from a judgment under ORS 19.205 to which an award of attorney fees or costs and disbursements relates[, and] the appellate court reverses the judgment, the award of attorney fees or costs and disbursements shall be deemed reversed." ORS 20.220(3)(a); *see also PNC Multifamily Capital v. AOH-Regent Ltd. Partnership*, 262 Or App 503, 518, 329 P3d 773 (2014) ("[B]ecause the supplemental judgment awarding attorney fees was predicated on the general judgment of dismissal, we reverse that as well."); *ZRZ Realty v. Beneficial Fire and Casualty Ins.*, 257 Or App 180, 187, 306 P3d 661 (2013) ("[T]he legal effect of reversing the underlying attorney fee award in the general judgment was to reverse the supplemental judgment for attorney fees as well[.]").

The attorney fee award in this case involves an unusual procedural twist, in that defendant requested attorney fees pursuant to ORS 20.080, which provides for a mandatory fee award to a successful plaintiff or counterclaimant in certain small claims actions. *See* ORS 20.080(1) (providing for an attorney fee award to a prevailing plaintiff "[i]n any action for damages for an injury or wrong to the person or property, or both, of another where the amount pleaded is $10,000 or less"); ORS 20.080(2) ("If the defendant pleads a counterclaim, not to exceed $10,000, and the defendant prevails in the action, there shall be taxed and allowed to the defendant, at trial and on appeal, a reasonable amount to be fixed by the court as attorney fees for the

prosecution of the counterclaim.").[4] What is unusual about defendant's reliance on ORS 20.080(2) is that defendant's only "counterclaim" is a counterclaim *for attorney fees*. That is, defendant asserts that it is entitled to attorney fees for prosecuting a counterclaim for attorney fees. The trial court accepted that circular logic and awarded attorney fees of $9,999 to defendant, along with a "principal" award of "$0" on the "counterclaim."

Notwithstanding the odd procedural posture, there is no question on this record that the attorney fee award in the supplemental judgment "relates" to the general judgment that we have now reversed. ORS 20.220(3)(a). Among other things, the general judgment expressly states that attorney fees will be awarded pursuant to a supplemental judgment, which is what occurred. We therefore reverse the supplemental judgment as a matter of course, *see id.*, and we decline to address the merits of whether the trial court erred in awarding attorney fees to defendant under ORS 20.080(2), based on defendant's counterclaim *for* attorney fees. Our skepticism about the propriety of the fee award may be apparent, but it is an issue that we ultimately need not resolve, given the more fundamental reason to reverse the supplemental judgment, and we are disinclined to do so when the issue may not arise again on remand.

General judgment reversed and remanded; supplemental judgment reversed.

---

[4] ORS 20.080 only provides for attorney fees in "an action for damages for an injury or wrong to the person or property." As such, defendant appears to view this case as an action for property damage when it comes to attorney fees, even though it contests that it is such an action for purposes of the economic loss doctrine.